483 A.2d 1330

**GLY CONSTRUCTION COMPANY, et al**

v.

**Louis J. DAVIS.**

**No. 239, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Nov. 20, 1984.

Certiorari Denied Feb. 5, 1985.

</div>

A. Paul Kaye, Baltimore, with whom was David P. Batten, Baltimore, on brief, for appellants.

David J. Churchill, Landover, with whom were Koonz, McKenney & Johnson, P.C., Landover, on brief, for appellee.

Argued before GILBERT, C.J., MOYLAN, J., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

GILBERT, Chief Judge.

Although it undoubtedly can be phrased more eloquently, the question before us is whether the employer-insurer, appellant, pays the claimant $45,621 or $18,675.

The specific issue posited to us by the appeal is stated as:

"When dealing with 'specific injuries' as opposed to 'other cases,' can the Workmen's Compensation Commission award a percentage of disability which is greater than the highest medical evidence in the record?"

 If that were all that were before us, we would summarily affirm on the ground that we do not review a decision of the Workmen's Compensation Commission but rather that of the circuit court. Since the instant matter was tried *de novo* before the court, what did or did not happen before the Commission is of no direct consequence to us. Nevertheless, rather than summarily affirm the trial court, we shall restate the question:

Did the Circuit Court for Prince George's County improperly uphold an award by the Workmen's Compensation Commission of 100 percent disability of claimant's left hand, which award exceeded the amount of disability established by the medical evidence?

Little need be said about the facts insofar as they relate to the accidental injury. It is enough to know that Louis J. Davis's left hand was severely and extensively injured in the course of his employment. As a result of that injury, Davis was subjected to surgery. His index and medius or second finger were removed. Extensive portions of flesh and bone were cut from his hand. His left thumb almost totally lacks mobility and does not function in opposition to the remaining two fingers, and those fingers have limited movement. Davis cannot close his fist or use his hand to any extent. He complains of pain when he attempts to use the hand and states that he is unable to grip anything with the hand. Davis did testify that he drives a vehicle and while doing so, he occasionally "lays" his damaged hand upon the steering wheel.

One doctor who examined Davis for the appellants, Gly Construction Company and Employers Insurance of Wausau, reported that Davis had sustained a "permanent impairment of fifty percent of the left hand." Davis's attor-

ney referred him to another doctor who said that Davis had "a 90 percent permanent partial disability of his left hand."

Based on the medical reports, the appellants conclude that the circuit court was wrong in affirming the Commission. Reduced to its simplest form, what the appellants aver is that at the most Davis should not have been awarded compensation for more than 90 percent loss of the use of his left hand. To reach that conclusion, the appellants seemingly equate anatomical loss with loss of use.

The finding by the trial court and the Commission of 100 percent loss of use by Davis of his left hand resulted in an award to Davis of compensation for 333 weeks. That compensation award had a dollar value of $45,621. Had the court found but 90 percent loss of use of the hand, that finding would have eliminated 25 weeks of benefits under Md.Ann.Code art. 101, § 36(3), and 83 weeks of "serious disability" payments under § 36(4a), thus reducing the dollar sum payable to Davis to $18,675. Moreover, the payments made under § 36(3) are at a lower rate than under § 36(4a).

■ We are unable to find within the workmen's compensation statute, Md.Ann.Code art. 101, any words that expressly or implicitly limit the Commission, or the court on appeal, to consider only medical evaluation. *See* art. 101, § 11. The function of the Commission initially is to determine the extent of loss of use, and hence the percentage of disability, and not merely to adopt medical evaluations of anatomical impairment. *Cf.* art. 101, § 15 (compensation is payable because of employee's *"disability* or death") (emphasis supplied). As Professor Larson has noted:

> "It has been stated repeatedly that the distinctive feature of the compensation system ... is that its awards (apart from medical benefits) ... are made not for physical injury as such, but for 'disability' produced for such injury. The central problem, then, becomes that of analyzing the unique and rather complex legal concept which, by years of compensation legislation, decision, and prac-

tice, has been built up around the term 'compensable disability.' "

2 A. Larson, Larson's Workmen's Compensation Law § 57.11 (1983 ed.) (footnotes omitted).

This Court in *Blanding v. J.H. Andrews & Sons,* 36 Md.App. 14, 20, 373 A.2d 19, 23 (1977), noted that the terms "injury" and "disability" under art. 101 are not synonymous. We said that although under Md.Ann.Code art. 101 "injury" and "disability" oftentimes are used interchangeably, the distinction to bear in mind is that compensation is not paid for an "injury," but for the resulting "disability."

■ To hold that in all cases the Commission or the court is compelled to find an amount of disability that is no greater than the highest medical evaluation and no less than the lowest medical evaluation would impermissibly shift the legal determination of "disability" to physicians. That result would be in clear contravention of the legislative intent and traditional role of the Commission or court.

In addition to the medical reports, the Commission and the trial court on appeal could and patently did consider Davis's testimony as to the manner, degree, and extent that he could and could not use his hand. Additionally, the Commission and the trial court had the opportunity to observe the claimant and to view the result of the injury he sustained. Md.Ann.Code art. 101, § 36(3)(c) provides in pertinent part:

"Permanent loss of use of hand, arm, foot, leg or eye, shall be considered as the equivalent of the loss of such hand, arm, foot, leg or eye ...."

■ There is no requirement in § 36(3)(c) that in order for there to be a 100 percent loss of use, the hand be no more than a useless piece of flesh and bone attached to the arm only as a decoration that is aesthetically more pleasing than a prosthesis.[1]

---

1. Professor Larson points out that,

Appellants contend that *Gillespie v. R & J Construction Co.*, 275 Md. 454, 341 A.2d 417 (1975), is dispositive in this matter. We think that case inapposite. Gillespie suffered an eye injury in an industrial accident. Medical evaluations of the eye rated his disability as being between 45 and 90 percent. The Commission awarded Gillespie benefits for 100 percent disability of the eye. On appeal, the Commission's award was upheld by a jury's verdict. The trial judge, however, entered a judgment *n.o.v.* in which he reduced the finding to 90 percent disability. The Court of Appeals, on certiorari, affirmed. The basis of the Court's ruling was that Gillespie had testified on his own behalf that he retained some sight in his eye. A finding of 100 percent "loss of use" was, therefore, unsupported by the evidence. "[T]he highest percentage of loss of vision to which reference [was] made [was] 90%," and Gillespie's award was reduced to the amount of disability reflected in the highest medical evaluation. *Id.* at 458, 341 A.2d at 419. That holding does not mean that the highest or lowest evaluations, or their average, are the limit of disability that may be awarded by the Commission in the first instance, or by the trial court on appeal from the Commission's finding.

■ We perceive no error in the trial court's affirmance of the Commission's order. The court had the evidence before it as well as the opportunity to observe Davis's hand, to assess Davis's credibility, and to supplement the medical evaluation with its own empirical findings. We are unable to state that those findings are clearly erroneous. Md.Rule 1086. Furthermore, we think the judge's legal conclusion, based on those factfindings, was correct.

---

"[c]omplete loss of use was added to loss or loss by severance [found in scheduled member compensation statutes, such as Md. Code Ann. art. 101, § 36(3) ], on the quite reasonable argument that a person may, if anything, be better off with an amputation (thus permitting use of a prosthesis) than with a dangling arm or leg that not only is useless but gets in the way." 2 A. Larson, *supra* at § 57.14(d).

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.