**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1227**

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Subscribing to Certificate Nos. 1149760, 1149761, and 1149763,

        Plaintiff - Appellee,

        v.

MAX HARRY COHEN, M.D.; MAX HARRY COHEN, M.D., CHTD.,

        Defendants - Appellants.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Jillyn K. Schulze, Magistrate Judge. (8:13-cv-00311-JKS)

Argued: March 25, 2015             Decided: May 5, 2015

Before MOTZ and GREGORY, Circuit Judges, and Mary G. LEWIS, United States District Judge for the District of South Carolina, sitting by designation.

Reversed and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Gregory and Judge Lewis joined.

**ARGUED:** Erik David Frye, Upper Marlboro, Maryland, for Appellants. Neal Richard Novak, NOVAK LAW OFFICES, Chicago, Illinois, for Appellee. **ON BRIEF:** Steven E. Leder, Julie Furst Maloney, LEDER LAW GROUP, PC, Baltimore, Maryland, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Certain Underwriters at Lloyd's of London brought this suit against Dr. Max Harry Cohen, a general surgeon, and Max Harry Cohen, M.D., Chtd., the corporate entity under which his practice operated (collectively, "Dr. Cohen"), seeking a declaration that they properly rescinded his disability insurance policies. The magistrate judge held that Dr. Cohen made material misrepresentations on his policy applications and so granted summary judgment to the Underwriters. For the reasons that follow, we reverse and remand for further proceedings consistent with this opinion.

I.

On April 1, 2011, Dr. Cohen submitted several initial applications for disability insurance to Petersen International Underwriters, a surplus-lines broker authorized by the Underwriters to enter into insurance contracts on their behalf. Each four-page insurance application consists of questions pertaining to an applicant's personal, financial, and medical information.

At issue here are Dr. Cohen's responses to three of those questions. When asked "Are you actively at work?," Dr. Cohen checked the "Yes" box. In response to the question "Are you aware of any fact that could change your occupation or financial

2

stability?," Dr. Cohen checked the "No" box.  When asked "Are you party to any legal proceeding at this time?," Dr. Cohen again checked the "No" box.  Dr. Cohen signed final applications with these answers on August 8, 2011, and the policies became effective on that date.

On April 12, 2011, shortly after submission of his initial applications and prior to submission of his final applications, Dr. Cohen signed a Consent Order with the Maryland State Board of Physicians (the "Board"), which suspended his license to practice medicine in Maryland.  The Consent Order provided that Dr. Cohen's suspension would begin on August 2, 2011, and continue for a period of three months.  Dr. Cohen agreed in the Consent Order to wind down his practice and refer all patients to other doctors during the three-month period prior to his suspension, and supply the Board with sixty days' notice of his intent to become clinically active following his suspension. The Consent Order further provided that if Dr. Cohen returned to active practice, he would be on probation for five years, and would be supervised for the first year.[1]

On September 8, 2011, one month after the disability policies went into effect, Dr. Cohen sought medical treatment

---

[1] On December 19, 2012, the District of Columbia Board of Medicine also issued an order placing Dr. Cohen on probation for five years.  It, too, imposed various limitations and restrictions on his ability to practice medicine.

for injuries to his thumb and leg resulting from a fall. Later that month, Dr. Cohen's insurance agent provided the Underwriters with notice of a possible claim. The Underwriters retained Disability Management Services, Inc. to investigate and adjust the potential claim. That investigation uncovered the Consent Order. The Underwriters then notified Dr. Cohen that they intended to rescind the policies, and issued a check refunding his premium payments.

Dr. Cohen initiated the policies' grievance procedures, under which the rescission was affirmed. He requested an informal review, and the rescission was again upheld. The Underwriters, which are incorporated under the laws of England and Wales, and have their principal places of business in London, subsequently brought this diversity action against Dr. Cohen, a Maryland citizen. The Underwriters asserted that Dr. Cohen made material misrepresentations on his applications for insurance and sought a declaration that they properly rescinded his policies. The parties agreed to proceed before a magistrate judge.

Dr. Cohen filed a motion in limine to exclude all references to any proceedings, records, files, or orders by the Board. After a telephonic hearing, the magistrate judge orally denied the motion, concluding that the Consent Order was admissible. The parties then filed cross-motions for summary

4

judgment. In a memorandum opinion, the magistrate judge granted summary judgment to the Underwriters and denied Dr. Cohen's cross-motion. The court concluded that the Underwriters validly rescinded the insurance policies because Dr. Cohen made material misrepresentations in his applications.

Dr. Cohen timely noted this appeal, challenging both the magistrate judge's grant of summary judgment to the Underwriters and denial of his motion in limine to exclude all references to the Consent Order.

## II.

We first address the court's grant of summary judgment to the Underwriters, which we review de novo. Bland v. Roberts, 730 F.3d 368, 373 (4th Cir. 2013). In doing so, we "apply[] the same legal standards as the district court," and "view[] all facts . . . in the light most favorable to the nonmoving party." T-Mobile Ne. LLC v. City Council of City of Newport News, Va., 674 F.3d 380, 385 (4th Cir. 2012) (internal quotations marks and citation omitted). We can affirm a grant of summary judgment only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1355 (2015) (citing Fed. R. Civ. P. 56(a)).

5

The Underwriters contend that Dr. Cohen provided materially false answers to three questions on his policy applications: "Are you actively at work?" (to which he answered "Yes"); "Are you aware of any fact that could change your occupation or financial stability?" (to which he answered "No"); and "Are you a party to any legal proceeding at this time?" (to which he answered "No").

Under Maryland law, which the parties agree applies here, a material misrepresentation on an insurance policy application justifies the rescission of a policy issued on the basis of that application. Stumpf v. State Farm Mut. Auto. Ins. Co., 251 A.2d 362, 367 (Md. 1969). To decide whether an insurer has validly rescinded a policy, a court must first determine whether the policyholder made a false statement on the application. Monumental Life Ins. Co. v. Taylor, 129 A.2d 103, 106 (Md. 1957). If so, a court then considers whether the false statement was material to the risk assumed by the insurer. Id. "Ordinarily and generally, whether a representation is true or false, or material to the risk, is for the jury to determine," but when the insurer demonstrates falsity and materiality "by uncontradicted or clear and convincing evidence[,] the question may be one of law." Id. at 106-07 (internal quotation marks and citations omitted).

6

Insurance policies, like other contracts, must be construed "as a whole to determine the parties' intention." Beale v. Am. Nat'l Lawyers Ins. Reciprocal, 843 A.2d 78, 89 (Md. 2004) (internal quotation marks and citation omitted). A court will "examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." Pac. Indem. Co. v. Interstate Fire & Cas. Co., 488 A.2d 486, 488 (Md. 1985). Policy terms are given "their ordinary and accepted meanings," and "[t]he test is what meaning a reasonably prudent layperson would attach to the term." Id. Policy language is ambiguous if it is "general" and "suggest[s] two meanings to a reasonably prudent layperson." Id. at 489 (internal quotation marks and citation omitted).

Applying these principles,[2] we can only conclude that each of the questions to which Dr. Cohen allegedly gave false answers is subject to more than one reasonable interpretation, and so is ambiguous. First, the question "[a]re you actively at work?" is ambiguous because there are several possible interpretations of what it means to be "actively at work." The Underwriters

_____

[2] The parties do not dispute that the same rules apply to ambiguities in a policy application, like that at issue here, prepared by an insurer and made part of the insurance contract. Peoples Life Ins. Co. v. Jerrell, 318 A.2d 519, 522 (Md. 1974). Each policy certificate sent to Dr. Cohen specified that "[t]his certificate" and "any attached endorsements or other papers make up the entire contract," and Dr. Cohen's policy application was attached to each certificate.

contend that by answering "Yes," Dr. Cohen represented that he was "perform[ing] surgery on a daily basis when he was, in fact, prohibited from performing surgery." Appellees' Br. 26. Dr. Cohen's interpretation is more expansive. He maintains that he was "actively at work" during the suspension both because he was a licensed surgeon in the District of Columbia, and because he continued to perform various duties related to his Maryland practice, including administrative work, research, and professional development. He asserts that, during his suspension, he often arrived home from being "at work" in the office after midnight.

Neither of these interpretations is unreasonable; both find support in the insurance policies. As the Underwriters point out, on another portion of the application, Dr. Cohen indicated that his occupation was "surgeon" and his "daily duties" were "surgery," possibly suggesting that this was his only "work" -- "work" he lacked the authority to perform in Maryland during his suspension. Maybe so. But the application does not define the phrase "actively at work," does not limit its inquiry to Maryland work, and does not provide that being "actively at work" requires performance of the specific "daily duties" an applicant may have listed in the limited space available for that response.

8

The second question to which the magistrate judge found Dr. Cohen had provided a false response -- "[a]re you aware of any fact that could change your occupation or financial stability?" -- is also ambiguous. The Underwriters contend that "financial stability" refers to an applicant's active income, not net worth, since disability insurance protects only active income. Because Dr. Cohen was suspended from performing his daily duties of "surgery" in Maryland, according to the Underwriters, he was no longer a "surgeon" and so lacked "active income."

As Dr. Cohen notes, however, his Maryland suspension was temporary, and because he could still practice in the District of Columbia while suspended in Maryland, his "occupation" as a "surgeon" was not in danger of changing. Furthermore, the application does not define "financial stability," or provide any guidance on how an applicant would determine whether his financial stability could "change." "Financial stability" is a broad term that could refer to net worth and the record indicates that Dr. Cohen's net worth apparently increased during his suspension.

Finally, the Underwriters maintain Dr. Cohen's answer of "No" to a third question -- "[A]re you a party to any legal proceeding at this time?" -- was also materially false. The magistrate judge did not address whether Dr. Cohen falsely

answered this question because the judge concluded that the question was ambiguous. We agree. The application does not define "legal proceeding." And although each party cites to authority supporting its position as to whether the Board proceeding is or is not a "legal proceeding," the standard is "what meaning a reasonably prudent layperson would attach to the term." Pac. Indem. Co., 488 A.2d at 488.

The Underwriters note that in executing the Consent Order, Dr. Cohen acknowledged representation by counsel and the "legal authority and jurisdiction of the Board." Moreover, the Consent Order seems, on its face, to be a legal document because it contains findings of fact and conclusions of law. But the Board proceeding did not involve a court, and a person subject to a Board proceeding might well conclude, as Dr. Cohen asserts he did, that by agreeing to the suspension of his medical license, he would avoid a legal proceeding. Furthermore, at the time Dr. Cohen submitted his final application, the Board proceeding was over: he was not then a party to a Board proceeding, legal or not, at that time. Thus, this question, too, is susceptible to several interpretations.

In sum, the language of each question at issue here is ambiguous. Each of these general questions contains undefined terms susceptible to more than one reasonable interpretation, making them ill-suited to elicit the specific type of

10

information the Underwriters claim to have requested. The Court of Appeals of Maryland has repeatedly made clear that an insurance application, as "a condition precedent" to an insurer's reliance on it, "must be reasonably designed to elicit from [the applicant] the information which he possesses, material to the risk." Stumpf, 251 A.2d at 367; see also Jerrell, 318 A.2d at 522 (noting same).

Because of the ambiguity in the language of the policy application, we conclude that summary judgment was inappropriate. We therefore reverse the grant of summary judgment to the Underwriters and remand the case to the district court. On remand, the court may consider whether extrinsic or parol evidence can cure the ambiguity. Cheney v. Bell Nat'l Life Ins. Co., 556 A.2d 1135, 1138 (Md. 1989) ("[i]n the event of an ambiguity . . . extrinsic and parol evidence may be considered"). If the court determines, based on such evidence, that the language is unambiguous and that Dr. Cohen made misrepresentations, it must then assess whether such misrepresentations were material. We express no opinion on that question. If, on the other hand, extrinsic evidence does not cure the ambiguity, that ambiguity must be construed against the insurer as the drafter of the instrument. Id. at 1138. We note that it is of course within the court's discretion, on remand,

11

to conduct any further proceedings that it finds appropriate, including further consideration of summary judgment.

III.

On remand, the district court will have the renewed opportunity to consider evidence of alleged material misrepresentations by Dr. Cohen. Thus, we turn to the magistrate judge's denial of Dr. Cohen's motion in limine. The judge concluded that the Consent Order suspending Dr. Cohen's Maryland medical license was admissible in this case. Dr. Cohen contends that this conclusion is contrary to Maryland law, which requires express consent of all parties before such an Order can be admitted in any civil proceeding.

Generally, "[w]e review rulings concerning the admission of evidence for abuse of discretion." United States v. White, 405 F.3d 208, 212 (4th Cir. 2005). However, because the magistrate judge based her decision to admit the Consent Order on a question of statutory construction, we review her interpretation of the statute de novo. Clark v. Absolute Collection Serv., Inc., 741 F.3d 487, 489 (4th Cir. 2014) (per curiam).

Whether a consent order rendered by the Maryland State Board of Physicians is admissible in a case like this one is an issue of first impression. In this diversity case, we consider this question "as the state court would do if confronted with

12

the same fact pattern." Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994). Accordingly, we begin by examining the language of the statute. Jones v. State, 647 A.2d 1204, 1206 (Md. 1994). Under Maryland law, as elsewhere, "[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, [a court must] give effect to the statute as it is written." Id. at 1206-07.

Title 14 of the Maryland Code, Health Occupations Article establishes the State Board of Physicians as a state agency with the authority to license, investigate, and discipline physicians and other health care providers. Md. Code Ann., Health Occ. § 14-201 et seq. (2014); What is the Maryland Board of Physicians?, Department of Health and Mental Hygiene: Maryland Board of Physicians (last visited Apr. 20, 2015), http://www.mbp.state.md.us/pages/whatis.html. The provision in question here, Health Occupations § 14-410, states:

> (a) Except by the express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies, in a civil or criminal action:
>> (1) The proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible in evidence; and
>> (2) Any order passed by the Board or disciplinary panel is not admissible in evidence.
> (b) This section does not apply to a civil action brought by a party to a proceeding before the Board or

13

disciplinary panel who claims to be aggrieved by the decision of the Board.[3]

The plain language of this statute bars the admission of "any order" of the Board in "a civil or criminal action" except by consent, or when "a party to a proceeding before the Board" brings a civil action, claiming to be "aggrieved by a decision of the Board." Id. There is nothing in § 14-410, or in any other portion of the statute, indicating that this admissibility bar applies only in malpractice actions, or that there is an exception for insurance coverage matters. Thus, solely by the "express stipulation and consent of all parties to a proceeding before the Board" can a Board order be admitted into evidence in a civil proceeding like this one. Id. There was no consent here.

Moreover, the legislative history of § 14-410 indicates that the General Assembly intended the provision to be a straightforward bar to the admission of all Board orders, except with express consent of all parties to the underlying Board proceeding. The predecessor to § 14-410 was § 130(q) of Article 43 of the Maryland Code. The legislature added § 130(q) to Article 43 for the express "purpose of prohibiting the admission of certain records of the [Board] into evidence in any civil or

_____

[3] The Underwriters do not contend that the sole statutory exception contained in § 14-410(b) applies here.

14

criminal proceeding, with certain exceptions." 1976 Md. Laws 1599 (emphasis added).[4] In Unnamed Physician v. Commission on Medical Discipline, the Court of Appeals of Maryland noted that § 130(q) did just that: it "forbids the record of [Board] proceedings to be admitted into evidence in any proceeding, civil or criminal, except by the express consent of the parties." 400 A.2d 396, 397 (Md. 1979).

Nor, contrary to the Underwriters' contention, does the fact that the Consent Order is public somehow render it admissible in a judicial proceeding. The Consent Order states on its face that it "shall be a public document" under the Maryland Public Information Act. See Public Information Act, Md. Code Ann., Gen. Prov. §§ 4-101 - 4-601 (2014). That statute "allows generally for the inspection and receipt of copies of public records." Waterkeeper Alliance, Inc. v. Md. Dep't of

---

[4] Section 130(q) provided, in relevant part:
The records of any proceeding before the [Board] or of any of its investigatory bodies or any order passed by the [Board] may not be admitted into evidence in any proceeding, civil or criminal, except by the express stipulation and consent of all parties to the proceeding.
1976 Md. Laws 1599.

15

<u>Agric.</u>, 96 A.3d 105, 108 (Md. 2014).[5] Each disciplinary order is also publicly available on the Internet. <u>See</u> Md. Code Ann., Health Occ. §§ 14-411.1(b)-(d)(2) (requiring the Board to "create and maintain a public individual profile" on each licensed physician, available to the public on the Internet, which includes "[a] description of any disciplinary action taken by the Board . . . within the most recent 10-year period" and "includes a copy of the public order"). But nothing in either the Public Information Act or Title 14 of the Health Occupations Article requires that public documents be admissible in judicial proceedings.

The Underwriters certainly cite no authority for the general proposition that a document is admissible solely because it is public. Nor can they. That a document is public does not remove it from the purview of the rules of evidence, or a statute explicitly governing its admissibility. <u>See</u> The Md. Inst. for Continuing Prof. Ed. of Lawyers, Inc., Maryland Trial Judges' Benchbook, Evidence, § 4-804(g)(1) (1999) (noting that "[s]ome public records . . . must meet specific statutory requirements to be admissible"); 10 Eric. C. Surette & Susan L.

---

[5] The Consent Order cited to the 2009 codification of the Public Information Act. While this appeal was pending, the Maryland General Assembly recodified the Act at §§ 4-101 – 6-601 of the Code's General Provisions Article, but made no changes affecting Board orders being public documents. <u>See</u> 2014 Md. Laws Ch. 94 (H.B. 270).

Thomas, Maryland Law Encyclopedia, Evidence, § 95 (2015) (noting that the "admissibility of public records is subject to the general rules of evidence" governing, for example, relevancy, competency, materiality, and authenticity). And if a document's public nature does not render that document automatically admissible, then the fact that Dr. Cohen agreed to the Order's being public does not mean, as the Underwriters assert, that he "broadly consented" to its admissibility. Appellees' Br. 16.

In sum, no statutory language or legislative history in either the Maryland Public Information Act or Title 14 of the Health Occupations Article or any other Maryland law indicates that by making Board orders public, the legislature intended to repeal or otherwise limit the admissibility bar that § 14-410 so explicitly establishes. See Comm'n on Med. Discipline v. Bendler, 373 A.2d 1232, 1234 (Md. 1977) (noting that "the law does not favor repeal by implication."). It is axiomatic that "all statutory provisions which relate to the same subject matter . . . should be construed together and harmonized as far as possible." Unnamed Physician, 400 A.2d at 401; see also Bendler, 373 A.2d at 1234 (noting same). This well-established approach applies here and thus requires a court to hold that, while public, Board orders are not admissible in a civil or criminal action absent consent, except for in an action brought by a party aggrieved by a Board decision.

We note that our conclusion not only comports with the plain language of the Maryland statutes at issue here and reads those provisions in harmony -- it also makes good practical sense. Requiring disciplinary orders to be public gives people access to essential information about the qualifications of their physicians. Barring the admission of Board disciplinary orders in later civil and criminal actions encourages physicians to cooperate during Board proceedings. Such cooperation strengthens the Board's ability to conduct proceedings that are thorough and fair, and thereby advances the Board's efforts to protect the health and safety of the public.[6]

IV.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED

---

[6] If, on remand, the district court determines that extrinsic evidence submitted by the parties cures the ambiguity in the policy application questions, the court may also need to consider whether references to the inadmissible Order or to the Board's proceedings against Dr. Cohen are also inadmissible. Because the court found the Order to be admissible, that question was neither addressed below nor properly briefed before us. Thus, we decline to resolve it in the first instance. That said, if the court concludes that references to the Order are indeed inadmissible, we believe redaction may be a prudent use of the district court's discretion.

18