**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1055

September Term, 2014

_____

PEPSI BOTTLING GROUP, et al.

v.

DEREK L. PLUMMER

Meredith,
Leahy,
Reed,

JJ.

Opinion by Meredith, J.

Filed:   January 28, 2016

Following a jury trial in the Circuit Court for Prince George's County in a workers' compensation case, judgment was entered in favor of the claimant, Derek L. Plummer, appellee. Pepsi Bottling Group and its workers' compensation insurer Indemnity Insurance Company of North America (collectively referred to as "appellants") filed this appeal. Most of the appellants' arguments relate to the trial court's interpretation of the statutory privilege that bars evidence of the proceedings, records, files and orders of the Maryland State Board of Physicians (the "Board"), codified in Maryland Code (1981, 2014 Repl. Vol.), Health Occupations Article ("HO"), § 14-410. Appellants contend that the trial court erred in failing to grant their motion to strike the *de bene esse* video deposition of appellee's expert witness, Dr. Michael Franchetti; that the trial court erred in granting the appellee's motion in limine with regard to certain portions of Dr. Franchetti's testimony; that the trial court erred in failing to give a non-pattern jury instruction requested by appellants; and that the trial court erred in failing to grant appellants' motion for new trial.

## QUESTIONS PRESENTED

Appellants presents four questions for our review:

I. Whether the Circuit Court erred in its denial of the Appellant[s'] Motion to Strike the De Bene Esse Video Deposition of Appellee's Expert Witness or, in the alternative, to Compel discovery responses[.]

II. Whether the Circuit Court erred in its granting of the Appellee's Motion in Limine.

III. Whether the Circuit Court erred in its denial of the Appellant[s'] request for Special Jury Instructions.

IV. Whether the Circuit Court erred in its denial of the Appellant[s'] Motion for New Trial.

We answer "no" to Questions I, II, and IV, and conclude that Question III was not preserved for appeal. We affirm the judgment entered by the Circuit Court for Prince George's County.

## FACTS AND PROCEDURAL HISTORY

Appellee began working at a Pepsi bottling facility in 1989. He is a machine sanitizer. He described this as a "physically demanding" job, requiring him to walk up stairs, lift objects, squat under conveyor belts, and spend the lion's share of an eight-hour shift on his feet. On April 18, 2012, appellee slipped and fell at work, injuring his right leg and ankle. A supervisor drove him to Prince George's Hospital Center, where the medical attention focused on appellee's swollen right ankle, although appellee was experiencing such pain that he thought he had also broken his right knee. He was off work for two months. He participated in physical therapy for both the knee and the ankle, and was treated by an orthopedic-surgery practice. In June 2012, appellee was discharged from medical care and cleared to return to work.

On May 2, 2012, appellee filed a workers' compensation claim. On March 18, 2013, the case was heard before a workers' compensation commissioner. The commissioner issued an order on March 26, 2013, finding, as to permanent partial disability, that appellee had sustained 15% loss of use of the right leg (knee) — with 5% reasonably attributable to the workplace injury of April 18, 2012, and 10% due to a pre-existing condition — and that he had sustained 2% loss of use of the right foot, with no apportionment. (The ankle is

2

considered part of the foot in workers' compensation cases.)  On April 25, 2013, appellee filed a petition for judicial review in the Circuit Court for Prince George's County, and on May 14, 2013, appellants filed a response and jury demand.  Trial was scheduled for June 10 and 11, 2014.

Appellee designated Dr. Michael Franchetti, an orthopedic surgeon, to testify as an expert witness. Prior to being designated as an expert, Dr. Franchetti had agreed to the entry of a consent order by the Maryland State Board of Physicians to resolve disciplinary proceedings brought against him.  The consent order issued by the Board on October 4, 2012, concluded that Dr. Franchetti's "actions and inactions [with respect to the patients reviewed] constitute a failure to meet appropriate standards for the delivery of quality medical care, in violation of H.O. § 14-404(a)(22); gross overutilization of health care services, in violation of H.O. § 14-404(a)(19); and a failure to keep adequate medical records, in violation of H.O. § 14-404(a)(40)."

Pursuant to the terms of the consent order, the Board placed Dr. Franchetti on probation and imposed a $25,000 fine.  The consent order included a paragraph stating: "ORDERED that this Consent Order is considered a PUBLIC DOCUMENT pursuant to Md. State Gov't. Code Ann. § 10-611 *et seq.* (2009 Repl. Vol. and 2011 Supp.)."  The consent order contained a separate "Consent" page, signed by Dr. Franchetti.  The consent page included language reciting that Dr. Franchetti had been represented by counsel before entering into the consent order.  The consent page further provided:

3

I acknowledge the validity of this Consent Order as if entered into after the conclusion of a formal evidentiary hearing in which I would have had the right to counsel, to confront witnesses, to give testimony, to call witnesses on my own behalf, and to all other substantive and procedural protections provided by law. I agree to forego my opportunity to challenge these allegations. I acknowledge the legal authority and jurisdiction of the Board to initiate these proceedings and to issue and enforce this Consent Order. I affirm that I am waiving my right to appeal any adverse ruling of the Board that I might have filed after any such hearing.

Dr. Franchetti's *de bene esse* video deposition in the workers' compensation case was recorded on May 19, 2014. During the deposition, counsel for appellants asked Dr. Franchetti a series of questions about the Board's disciplinary proceedings and the consent order. Dr. Franchetti refused to answer any of these questions, asserting a claim of privilege pursuant to HO § 14-410(a).[1]

---

[1]As last amended on May 2, 2013, HO § 14-410 provides:

(a)    Except by the express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies, in a civil or criminal action:

    (1)    The proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible in evidence; and

    (2)    Any order passed by the Board or disciplinary panel is not admissible in evidence.

(b) This section does not apply to a civil action brought by a party to a proceeding before the Board or a disciplinary panel who claims to be aggrieved by the decision of the Board or the disciplinary panel.

(continued...)

4

On May 23, 2014, appellants filed a motion to strike the *de bene esse* deposition of Dr. Franchetti; in the alternative, appellants asked that the court compel Dr. Franchetti to respond to the unanswered discovery deposition questions. On May 28, 2014, appellee filed an opposition to the motion to strike, as well as a motion in limine to preclude any mention of, and any evidence regarding, the Board's disciplinary proceedings and the consent order at the upcoming trial.

On June 10, 2014, the first morning of trial, the court heard arguments on the pending motions relative to Dr. Franchetti and the Board's disciplinary proceedings. The court denied appellants' motion to strike Dr. Franchetti's *de bene esse* deposition, and denied the request for an order to compel Dr. Franchetti to answer questions about the Board's disciplinary proceedings and consent order. The court also granted appellee's motion in limine and barred any mention of Dr. Franchetti's disciplinary proceeding. The court concluded that the plain language of HO § 14-410(a) was applicable and controlling. The court further concluded that, notwithstanding the consent to the entry of the order, Dr. Franchetti had not given consent to use of the order in subsequent legal proceedings such as this.

The trial took place on June 10 and 11, 2014. Dr. Franchetti's video deposition was played for the jury, as was the video deposition of Dr. Stephen Matz, a Board-certified

---

[1](...continued)
(c) If any medical or hospital record or any other exhibit is subpoenaed and otherwise is admissible in evidence, the use of that record or exhibit in a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies does not prevent its production in any other proceeding.

orthopedic surgeon who was designated as appellants' expert witness. Dr. Franchetti testified in his deposition that, in his opinion, appellee had a 27% permanent impairment of the right leg (knee) with 17% related to the April 18, 2012, fall, and 10% pre-existing, and 41% permanent impairment to the right foot (ankle), all related to the fall. Dr. Matz testified that, in his opinion, appellee had sustained no permanent impairment as a result of the fall on April 18, 2012.

Citing *Gly Constr. Co. v. Davis*, 60 Md. App. 602, 607 (1984), appellants requested that the trial court give the jury a non-pattern instruction that stated: "The terms 'injury' and 'disability' are not synonymous and, although they are used interchangeably, workers' compensation is paid for a 'disability' resulting from an 'injury,' not for the 'injury.'" The trial court denied the request, and explained that, although "it's an accurate statement of the law and certainly . . . fertile ground for you to argue," it was not necessary for the court to give the instruction. When the parties were given an opportunity to take exceptions after the court had instructed the jury, appellants did not register an exception to the court's failure to give this requested instruction.

The jury returned a verdict in favor of appellee, finding that appellee had sustained a permanent partial disability to his right leg of 17%, with 7% attributable to the fall of April 18, 2012, and 10% due to a pre-existing condition, and further finding that he had sustained a permanent partial disability to his right foot of 24%. Appellants filed a timely motion for new trial, the denial of which is the basis of the fourth question appellants present on appeal.

6

**DISCUSSION**

**Questions I, II, and IV**

Questions I, II, and IV all arise from the trial court's rulings relative to the disciplinary proceedings against Dr. Franchetti. The trial court ruled that HO § 14-410(a) rendered evidence of the disciplinary proceedings against Dr. Franchetti and the consent order inadmissible, and therefore denied appellants' alternative motions to strike Dr. Franchetti's testimony, or to compel him to answer questions relative to his disciplinary history, and granted appellee's motion in limine to preclude any reference to that history. The rulings all turn upon the interpretation of HO § 14-410. We review questions of statutory interpretation under a *de novo* standard of review to determine whether the trial court's ruling was "legally correct." *Salamon v. Progressive Classic Ins. Co.*, 379 Md. 301, 307 (2004).

Title 14 of the Health Occupations Article is captioned "Physicians," and includes various statutes regulating the medical profession. The State Board of Physicians is established within the Department of Health and Mental Hygiene by HO Title 14, Subtitle 2. The Board's duties include the investigation of complaints made against physicians and the adjudication of those complaints through use of disciplinary panels. *See* HO §§ 14-401, 14-401.1. If a licensee is found to have committed any of 41 acts enumerated in HO § 14-404(a)(1) through (41), a disciplinary panel may, after a hearing, impose a reprimand, or a period of probation or suspension, or may revoke a license to practice medicine.

At issue here is HO § 14-410(a), which decrees that the "proceedings, records and files of the Board" are "not admissible" in " a civil or criminal action." As noted above, the statute provides:

(a) Except by the express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies, in a civil or criminal action:

    (1) The proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible in evidence; and

    (2) Any order passed by the Board or disciplinary panel is not admissible in evidence.

Appellants and appellee offer competing interpretations of HO § 14-410(a). Appellants argue that the term "civil action," as used in the statute "only applies to civil actions brought against a physician for malpractice," and does not apply to civil actions in which a physician is testifying as an expert. Appellants argue that they should have been permitted to cross-examine Dr. Franchetti about the disciplinary proceedings and consent order. Appellee counters that, pursuant to the plain language of the HO § 14-410(a), the trial court correctly barred questions about Dr. Franchetti's past interaction with the Board.

When interpreting HO § 14-410(a), we apply frequently repeated rules of statutory construction. Key principles governing statutory construction were summarized as follows by the Court of Appeals in *Lockshin v. Semsker*, 412 Md. 257, 274-77 (2010) (citations omitted):

8

The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

Here, the language of HO § 14-410(a) is clear and unambiguous, and we need not resort to canons of interpretation. The statute states that, "in a civil . . . action," the "proceedings, records, or files of the Board . . . are not admissible in evidence," and that "[a]ny order passed by the Board or disciplinary panel is not admissible in evidence." The term "civil action" is generally understood to have a plain meaning which is considerably broader than suits brought against a physician for malpractice.

For example, Maryland Rule 2-101(a) provides: "A civil action is commenced by filing a complaint with a court." Maryland Rule 1-202(a) defines "action" as "collectively all the steps by which a party seeks to enforce any right in a court . . . ." Neither of these definitions restricts the term "civil action" to one in which a claim is brought against a physician for malpractice. We conclude that the term "civil action," as used in HO § 14-410(a), includes any civil proceeding filed in a court, and is not limited to a civil proceeding alleging medical negligence. Had the legislature wanted to limit the reach of HO § 14-410(a) to civil actions against a licensee physician alleging claims of medical negligence, it certainly could have done so. But the statutory language contains no such restriction, and to read such a restriction into the statutory language would be to add words to an unambiguous statute in order to give it a meaning not reflected by the words the General Assembly chose to use.

Appellants argue, however, that HO § 14-101(d) provides a more limited statutory definition for "civil action" as used in HO Title 14. Appellants urge us to hold that the definition in HO § 14-101(d) limits the term "civil action" — as used anywhere in Title 14

10

— to include only malpractice claims against health care providers. HO § 14-101(d) states: "'Civil action' *includes* a health care malpractice claim under Title 3, Subtitle 2A of the Courts Article." (Emphasis added.)

Unlike appellants, we do not read this definition as limiting the term "civil action" to malpractice claims alone. For us to accept appellants' argument, we would have to equate the word "includes" with the word "means." Neither case law nor the general provisions of the Maryland Code support that construction of "includes." In *Tribbitt v. State,* 403 Md. 638 (2008), the Court of Appeals considered an argument similar to that asserted by appellants, and held that, "when statutory drafters use the term 'means,' they intend the definition to be exhaustive," but "when drafters use the term 'includes,' it is generally intended to be used as 'illustration and not . . . limitation.'" *Id.* at 647 (citing *Hackley v. State,* 389 Md. 387, 393 (2005)). *Accord* Maryland Code (2014), General Provisions Article, § 1-110, which provides: "'Includes' or 'including' means includes or including by way of illustration and not by way of limitation."

Because medical malpractice claims are the subject of mandatory arbitration requirements, it was rational for the General Assembly to clarify in HO § 14-101(d) that the definition of "civil action" includes (but is not limited to) "health care malpractice claims under Title 3, subtitle 2A of the Courts Article." This is because "health care malpractice claims under Title 3, subtitle 2A of the Courts Article" are subject to a mandatory arbitration requirement, and are initially filed with the Health Care Alternative Dispute Resolution

11

Office, which is not a court, but is instead a unit within the executive branch. *See* Maryland Code (1974, 2013 Repl. Vol.), Courts & Judicial Proceedings Article, § 3-2A-03, *et seq.* Without the language including "health care malpractice claims" within the definition of "civil action" in HO § 14-101(d), there may have been instances of confusion about the applicability of Title 14 to the arbitration proceedings, and the privilege which health care providers are afforded by HO § 14-410(a) would have arguably been unavailable to physicians during the arbitration phase of a medical negligence claim.

Appellants rely upon *Unnamed Physician v. Commission on Medical Discipline*, 285 Md. 1 (1979), and assert that there "the Court analyzed the legislative intent with respect to the term 'civil action' in [HO] § 14-410 (formerly Maryland Code (1957), Art. 43, § 130)," the statute at issue in this case. We do not agree that *Unnamed Physician* turned upon analysis of the legislative intent with respect to the term "civil action" as used in Art. 43, § 130. Rather, it concerned analysis of the legislative intent with respect to different language used in a different statute. *Unnamed Physician* was focused upon the interpretation of language contained in Art. 43, § 134A(d), the predecessor to the current HO § 1-401(d), and whether that statute precluded *the Board's right* to discovery of *a hospital's medical review committee's* records and proceedings; the issue on appeal in *Unnamed Physician* was not the discoverability and admissibility of the Board's proceedings, records, and orders.

In *Unnamed Physician,* the Court of Appeals explained that Article 43, § 134A permitted "a hospital (and other providers of health care) to establish from its medical staff,

12

a medical review committee. Such committee may also discipline a physician for unprofessional conduct by limiting or denying him staff privileges." 285 Md. at 4. Similar to the manner in which HO § 14-410(a) limits the discoverability and admissibility of Board records and proceedings, Art. 43, § 134A also contained a provision rendering medical review committee records and proceedings inadmissible under certain circumstances, but the immunity language of § 134A was considerably different from that which appears in HO § 14-410(a). Specifically, Art. 43, § 134A(d) provided:

> The proceedings, records, and files of a medical review committee are neither discoverable nor admissible into evidence *in any civil action arising out of matters which are being reviewed and evaluated by the committee*. This immunity does not apply to a civil action brought by a party to the proceedings of the review committee and claiming to be aggrieved by the decision of the committee. Also, this immunity does not extend to any records or documents considered by the committee which would otherwise be subject to discovery and introduction into evidence in a civil action.

(Emphasis added.)

At issue in *Unnamed Physician* was whether the Commission on Medical Discipline ("Commission") — the predecessor agency to the Board — could obtain access via subpoena to the records of a hospital's medical review committee with respect to disciplinary action taken by the hospital against the unnamed physician. The unnamed physician argued that a disciplinary proceeding before the Commission was a "civil action" within the ambit of Art. 43, § 134A(d), and therefore, the Commission's discovery of the medical review committee's proceedings, records and files was prohibited by § 134A(d). In the context of that dispute, the Court of Appeals concluded that, "as a fundamental principle a civil action is an

13

adversary proceeding before a court of law; judicial review of the decision of an administrative agency is a civil action; [but] a proceeding before the Commission [on Medical Discipline] is not a civil action unless the Legislature has clearly manifested an intention that it should be." 285 Md. at 9-10. The Court concluded that, in the context of Art. 43, § 134A, the term "civil action arising out of matters that are being reviewed and evaluated" was probably "intended to mean a tort action for medical malpractice." 285 Md. at 12. Given the fact that the language "arising out of matters that are being reviewed and evaluated" was never included in the statutory predecessor of HO § 14-410(a), the Court of Appeals's holding in *Unnamed Physician* is not inconsistent with our interpretation of HO § 14-410(a).

Any doubt in that regard was removed when the Court of Appeals revisited the interpretation of "civil action" in *St. Joseph Medical Center, Inc. v. Cardiac Surgery Assocs., P.A.*, 392 Md. 75 (2006). The *St. Joseph* Court noted that the privilege relative to medical review committee proceedings, then (as now) codified in HO § 1-401(d)(1), had been amended in 1997, and the statute no longer included the words "arising out of matters that are being reviewed and evaluated" such that, "effective October 1, 1997, . . . the privilege applied 'in any civil action' without limitation." *Id*. at 92. As a consequence of the amendment, the *St. Joseph* Court ruled that the medical review committee privilege now applied to *any* civil action: "The 1997 change . . . extended the privilege to 'any civil action.' Certainly, a Maryland tort action based on alleged unfair competition and interference with

14

economic relations falls within the statutory phrase 'any civil action.'" *Id*. at 98. The Court

supported its conclusion that this is the correct interpretation of "any civil action" by quoting

from a legislative report recommending the change in the statutory language:

> The Floor Report by the House Environmental Matters Committee on House Bill 775 of the 1997 General Assembly session, which bill became Ch. 696, stated as follows (emphasis added):
>
>> "Under current law, the proceedings, records, and files of a medical review committee are not admissible in any civil action that arise out of matters that are being reviewed and evaluated by the medical review committee. HB 775 would expand coverage to all types of civil litigation. This is important because a hospital can get subpoenas in divorce actions, *antitrust actions*, car accidents, health insurance disputes, etc. This can make important documents public records and drag doctors into collateral litigation as witnesses."
>
> There is little doubt that the General Assembly intended the privilege to be applicable in Maryland tort actions based on alleged unfair competition.

*Id*. at 98-99 (emphasis in original).

The fact that it is now clear that the reference to "civil action" in HO § 1-401(d)(1)

now includes *any* civil action supports our conclusion that the privilege in HO § 14-410(a)

was properly invoked in the present litigation relative to a workers' compensation claim.

In *Certain Underwriters at Lloyd's, London v. Cohen*, 785 F.3d 886 (4th Cir. 2015),

the United States Court of Appeals for the Fourth Circuit similarly concluded that the

privilege prohibiting the admission of evidence of the Board's records and orders, under HO

§ 14-410(a), is applicable in civil actions other than medical negligence actions. In that case,

in an opinion authored by Judge Diana Gribbon Motz, the court opined that the Board's

15

records and the public consent order entered in a disciplinary proceeding were not admissible in litigation between the physician and his disability insurance carrier. Judge Motz explained:

> The plain language of this statute [HO § 14-410(a)] bars the admission of "any order" of the Board in "a civil or criminal action" except by consent, or when "a party to a proceeding before the Board" brings a civil action, claiming to be "aggrieved by a decision of the Board." *Id*. There is nothing in § 14–410, or in any other portion of the statute, indicating that this admissibility bar applies only in malpractice actions, or that there is an exception for insurance coverage matters.

*Id*. at 893.

Appellants argue that, even if HO § 14-410(a) applies in civil actions other than civil actions alleging medical negligence, its application is nevertheless "expressly limited to documentary evidence" because HO § 14-410 is titled "Discoverability or admissibility in evidence of ***documents*** from investigations and hearing," and HO § 14-410(a) is titled "***Records*** not discoverable or admissible." (Emphasis in appellants' brief.) Appellants argue that "the plain meaning of the statute [therefore] prohibits the admission of documentary evidence only," and "Dr. Franchetti should have been compelled to answer questions regarding the Board's disciplinary proceedings even if the documents addressing those proceedings are inadmissible."

We disagree for several reasons. First, in determining the meaning of a statute, we look to the words of the statute itself, not a caption or heading. "Captions and headings are mere catchwords and can never be taken to limit or expand the plain meaning of the statutory language." *State v. Holton,* 193 Md. App. 322, 365 (2010); *accord* Maryland Code, General

16

Provisions Article, § 1-208. Here, the language of the statute applies not only to "records or files of the Board," but also to "proceedings . . . of the Board." The term "proceedings" encompasses not only "documentary evidence" that may have been presented to the Board, but other information as well, and expands the scope of the protection afforded by the privilege to all matters placed before or considered by the Board.

Second, to accept appellants' argument would mean that, even in medical malpractice suits against physicians and other health care providers, evidence about the Board's disciplinary proceedings would be admissible pursuant to testimony even if no documentary evidence about the proceedings could be introduced. To paraphrase a comment quoted by Court of Appeals in reference to cross-examination of one spouse about privileged statements made by the other spouse, "'[p]rotections against the use of privileged and inadmissible evidence [provided by HO § 14-410(a)] would be of little benefit [because opposing counsel would be] allowed, under the guise of "artful cross-examination," to tell the jury the substance of inadmissible evidence.'" *Sweetney v. State*, 423 Md. 610, 625 (2011) (quoting *United States v. Hall*, 989 F.2d 711, 716-17 (4th Cir. 1993)). Indeed, acceptance of appellants' argument on this point would mean that a Board's decision to impose disciplinary action could serve as grounds for cross-examination of a physician testifying in any civil action. This would severely limit the utility of the statutory privilege, and would be contrary to one of the purposes to be served by the privilege, which is to encourage full and frank participation in a disciplinary proceeding without fear of later entanglement or repercussions

in civil or criminal litigation. *See Certain Underwriters, supra*, 785 F.3d at 894 ("Barring the admission of Board disciplinary orders in later civil and criminal actions encourages physicians to cooperate during Board proceedings. Such cooperation strengthens the Board's ability to conduct proceedings that are thorough and fair, and thereby advances the Board's efforts to protect the health and safety of the public." (footnote omitted)). *See also Unnamed Physician*, *supra*, 285 Md. at 13 ("A more fundamental reason for preserving confidentiality in these proceedings is to ensure a high quality of peer review activity leading to the primary goal of this legislation to provide better health care."); *Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A.*, 162 F.R.D. 94, 97 (D. Md. 1995) (observing, with respect to the medical review committee privilege: "By ensuring the confidentiality of peer review proceedings, the Maryland legislature sought to foster effective review of medical care and thereby improve the quality of health care. As the Court of Appeals has noted, confidentiality is essential because '"physicians are frequently reluctant to participate in peer review evaluations for fear of exposure to liability, entanglement in malpractice litigation, loss of referrals from other doctors, and a variety of other reasons."' Recognizing that effective review of medical care requires candid as well as objective communication, the legislature enacted the privilege to combat such reluctance." (citations omitted) (quoting *Baltimore Sun Co. v. University of Maryland Medical Sys. Corp.*, 321 Md. 659, 666 (1991))).

There may be some appeal to the suggestion that, when a physician is voluntarily testifying about a healthcare issue as a paid expert witness,  adverse rulings of the Board

18

should, at a minimum, be a permissible topic of cross-examination if pertinent to the witness's expertise. But the statutory language of HO § 14-410 does not permit us to conclude that the legislature provided for different levels of privilege dependent upon the physician's role in the civil or criminal litigation. Consequently, we conclude that the General Assembly did not intend that doctors who have been the target of Board proceedings could be compelled to provide testimonial evidence about the disciplinary proceedings even though all documentary evidence regarding the action of the Board is protected by the privilege in HO § 14-410(a).

Appellants nevertheless argue that, by signing the consent page attached to the Board's order, Dr. Franchetti waived the privilege and brought the disciplinary action against him within the statutory exception to the protections afforded by HO § 14-410(a). The statutory exception relied upon by appellants provides: "Except by the ***express stipulation and consent*** of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies," the protections shall apply. The consent signed by Dr. Franchetti acknowledged that he was represented by counsel, that the consent order was valid, that the Board had jurisdiction, that he was waiving his right to an evidentiary hearing, and that he was waiving his right to appeal. But nowhere in the consent did Dr. Franchetti expressly **"**stipulate and consent" to the discoverability and admissibility of the Board proceedings in future civil actions.

19

Finally, appellants contend that, because the consent order contained a provision stating that it was to be "considered a **PUBLIC DOCUMENT** pursuant to Md. State Gov't. Code Ann. § 10-611 *et seq*.," the document was therefore admissible, despite the statutory protections afforded by HO § 14-410. Appellants further point out that the Consent Order was in fact placed in the public domain by being posted on the Board's website pursuant to HO § 14-411.1, and appellants assert that it "is illogical to deny the admissibility of evidence which is documented in a public record." We reject this argument. As noted above, the General Assembly expressly declared in HO § 14-410(a)(2): "Any order passed by the Board or disciplinary panel is not admissible in evidence." There is no statutory exception for orders of the Board that become matters of public record.

Moreover, the mere fact that a record is a public document does not support the conclusion that the document is, for that reason, admissible in evidence. In the course of rejecting a similar argument in *Certain Underwriters, supra*, 785 F.3d at 893, Judge Motz wrote:

> Nor, contrary to the Underwriters' contention, does the fact that the Consent Order is public somehow render it admissible in a judicial proceeding. . . . [N]othing in either the Public Information Act or Title 14 of the Health Occupations Article requires that public documents be admissible in judicial proceedings.
>
> The Underwriters certainly cite no authority for the general proposition that a document is admissible solely because it is public. Nor can they. That a document is public does not remove it from the purview of the rules of evidence, or a statute explicitly governing its admissibility. And if a document's public nature does not render that document automatically admissible, then the fact that Dr. Cohen agreed to the Order's being public

does not mean, as the Underwriters assert, that he "broadly consented" to its admissibility. . . .

In sum, no statutory language or legislative history in either the Maryland Public Information Act or Title 14 of the Health Occupations Article or any other Maryland law indicates that by making Board orders public, the legislature intended to repeal or otherwise limit the admissibility bar that § 14–410 so explicitly establishes.

(Citations omitted.)

For all of the above reasons, we conclude that there is no exception to the privilege that permits evidence of an adverse ruling of the Board to be used for cross-examination or impeachment of a physician who is testifying as an expert witness. The trial judge did not err in denying appellants' motion to strike the *de bene esse* deposition of Dr. Franchetti and in granting the appellee's motion in limine.

After the jury rendered its verdict, appellants filed a motion for new trial, renewing their arguments about the admissibility of evidence regarding the Board proceeding against Dr. Franchetti. Appellants argue on appeal that their motion for new trial should have been granted. But the only argument offered in support of this claim is a reference to the trial court's rulings relative to the disciplinary proceeding against Dr. Franchetti, already addressed in detail above. In light of our affirmance of the trial court's evidentiary rulings with respect to Dr. Franchetti, it follows that the trial court did not commit an abuse of discretion in its denial of appellants' motion for new trial.

## Question III

Appellants requested that the court give the jury a special instruction on the distinction, for compensability purposes, between a "disability" and an "injury." The requested non-pattern instruction would have told the jury:

> The terms "injury" and "disability" are not synonymous and, although they are used interchangeably, workers' compensation is paid for a "disability" resulting from an "injury," not for the "injury." *Gly Const. Co. v. Davis*, 60 Md. App. 602, 607 (1984).

We note that, although the proposed instruction is consistent with a statement made by this Court in *Gly*, there was no suggestion in that case that this distinction is a matter that should be addressed in jury instructions. When the proposed jury instructions were being discussed mid-trial by the trial court and counsel, appellee objected to the non-pattern instruction, and argued:

> [BY APPELLEE'S COUNSEL]: I don't believe — I'm not saying that it's an inaccurate statement of the law, but reading through the language there, I just don't think that it's helpful to the jury. Quite frankly I think it's more confusing than the information provided in the patterns. And on one's [*sic*, presumably "no one's"] contending that injury and disability are the same thing, and the jury does hear the distinction between impairment and disability from the doctors. I think that's what everyone was talking about. To me it's confusing to say they're not synonymous, but used interchangeably, and I don't really see why it's necessary to give the instruction.

After the court asked for a response, appellants argued:

> [BY APPELLANTS' COUNSEL]: I do believe that it's applicable here, given the issue of permanent partial disability, and whether you know, they're determining what if any compensation is owed. I think it's important for the jury to understand that unlike in a personal injury claim or negligence claim,

22

the compensation is based on the actual permanent disability as opposed to the injury itself.

The court declined to give the requested instruction, and explained that, although it was "an accurate statement of the law and . . . fertile ground for you to argue," it was unnecessary.

The court's instructions to the jury were drawn primarily from the Maryland Civil Pattern Jury Instructions (2009, 2013 Supp.), and, with respect to the workers' compensation issues, the court read MPJI-Civ 30:8, 30:27, and 30:30. Those instructions told the jury:

> An employee who has a pre-existing medical condition which is aggravated by an accidental injury is entitled to compensation. A determination of permanent partial disability is to be made in terms of percentage of disability. In determining the percentage of permanent disability of a leg and/or foot, you should consider the degree of loss or loss of use of the leg and/or foot. If you determine that the permanent disability of the employee is due in part to a pre-existing condition or a condition that developed after, but is not related to the accidental injury, you should determine[:] number one, to what extent if any, is the disability due to the accidental injury. Number two, to what extent if any, is the disability due to the pre-existing condition. And, number three, to what extent if any, is the disability due to any condition that developed after, but is not related to, the accidental injury.

Pursuant to Maryland Rule 2-522(b)(2)(A), the jury was asked to return its verdict in the form of "written findings upon specific issues." Question No. 1 asked the jury: "Expressed as a percentage, what is Mr. Derek Plummer's permanent partial disability to his right leg?" And, as a followup question: "What, if any, portion is due to the work injury sustained on April 18, 2012?" Question No. 2 asked the jury: "Expressed as a percentage,

23

what is Mr. Derek Plummer's permanent partial disability as a result of his right foot injury sustained on April 18, 2012?"

After the court concluded its jury instructions, appellants' counsel objected to the court's failure to read MPJI-Civ 30:2 (addressing "Entitlement – Generally") and the fact that the court read "all of [MPJI-Civ] 30:30 with regard to the one portion on condition subsequent to the work injury and related." But appellants did not renew any objection to the court's refusal to read the non-pattern instruction regarding the difference between the terms injury and disability.

Maryland Rule 2-520(e) provides, in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly *after the court instructs the jury*, stating distinctly the matter to which the party objects and the grounds of the objection." (Emphasis added.) Appellants included no argument in their brief contending that we should excuse the failure to assert a timely objection after the court instructed the jury. Instead, appellants merely asserted in a conclusory manner that "[t]he special instruction requested was a correct exposition of the law, was applicable in light of the evidence before the jury and was not fairly covered by the instructions actually given."

Because of the appellants' lack of timely objection in accordance with Rule 2-520(e), we conclude that the issue is not properly before us.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

24