*Brenda Smith v. Delaware North Companies, et al.*, No. 103, September Term, 2015. Opinion by Greene, J.

**EVIDENCE — ADMISSIBILITY OF CONSENT ORDERS — HEALTH OCCUPATIONS ARTICLE § 14-410**

Md. Code (1981, 2014 Repl. Vol., 2015 Cum. Supp.), § 14-410 of the Health Occupations Article generally prohibits the admission, as evidence in a criminal or civil action, a consent order entered into between the Board of Physicians and a physician. This prohibition is not limited to tort actions for medical malpractice. The admission of any portion of such a consent order into evidence constitutes reversible error. Under the circumstances, it is clear that defense counsel's emphasis on the consent order and the disciplinary action underlying the consent order led the jury to consider legally inadmissible evidence, which prejudiced the plaintiff.

Circuit Court for Baltimore City
Case No. 24C-14-002519
Argued: June 1, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 103

September Term, 2015

_____

BRENDA SMITH

v.

DELAWARE NORTH COMPANIES, ET AL.

_____

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Rodowsky, Lawrence F. (Retired,
 Specially Assigned)
Battaglia, Lynne A. (Retired, Specially
Assigned),

JJ.

_____

Opinion by Greene, J.

_____

Filed: August 19, 2016

In the instant case, we address whether Md. Code (1981, 2014 Repl. Vol., 2015 Cum. Supp.), § 14-410 of the Health Occupations Article ("HO") bars the admission of a Board of Physicians' consent order as evidence in a civil or criminal proceeding. Brenda Smith ("Smith") filed a workers' compensation claim seeking compensation benefits from Delaware North Companies and its insurer (collectively "Delaware North") for a full knee replacement. At issue was whether the injury Smith sustained at work caused her to need knee replacement surgery. During a jury trial in the Circuit Court for Baltimore City, Smith presented the expert testimony of Dr. Kevin McGovern. To impeach Dr. McGovern's credibility, Delaware North sought to admit a consent order that Dr. McGovern entered into with the Maryland Board of Physicians ("the Board"). Over a timely objection, the trial court admitted into evidence a portion of that consent order. We conclude it was legal error to do so. HO § 14-410 serves generally as a statutory bar to the admission of a Board of Physicians' consent order into evidence in a civil or criminal action.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2012, Smith slipped on the floor in the course of her employment as a cook at Camden Yards. She landed on her left knee when she fell. A few weeks after the fall, Smith sought medical attention from Dr. Thomas Whitten. An MRI of her left knee revealed that she had torn the posterior horn of the medial meniscus[1] and that she had

---

[1] The medial meniscus is the "crescentic intraarticular cartilage of the knee joint attached to the medial border of the upper articular surface of the tibia occupying the space surrounding the contacting surfaces of the femur and tibia." STEDMAN'S MEDICAL DICTIONARY 1184 (Thomas L. Stedman ed., 28th ed. 2006).

medial[2] compartment arthritis. Smith initially sought conservative treatment from Dr. Whitten in the form of cortisone shots. Dr. Whitten also recommended that Smith undergo an arthroscopic procedure. After Dr. Whitten's retirement, Smith transferred her care to Dr. Kenneth Tepper. Dr. Tepper recommended that Smith undergo unicompartmental knee arthroplasty.[3] Next, Smith visited Dr. Mark Cohen at Maryland Orthropedics, P.A. on November 11, 2013. Dr. McGovern, another practitioner at Maryland Orthropedics, P.A. saw Smith on February 18, 2014. Both Dr. Cohen and Dr. McGovern recommended Smith undergo a full left knee replacement.

On January 28, 2014, Smith filed a workers' compensation claim requesting an authorization for a total left knee replacement. The Workers' Compensation Commission denied her claim after it held a hearing on April 4, 2014. Smith filed a petition for judicial review of the Workers' Compensation Commission's denial of her claim in the Circuit Court for Baltimore City and requested a jury trial. On November 24, 2014, Smith filed a "Motion *In Limine* to Exclude Certain Testimony from Kevin McGovern, M.D." to prevent Delaware North from raising questions at trial about any professional disciplinary action taken against Dr. McGovern.[4] Smith also sought to exclude portions of Dr. McGovern's

---

[2] STEDMAN'S MEDICAL DICTIONARY 1167 (Thomas L. Stedman ed., 28th ed. 2006) describes the term "medial" as "[r]elating to the middle or center; nearer to the median or midsagittal plane."

[3] Unicompartmental refers to one compartment of the knee, rather than the full knee.

[4] The disciplinary action involved a consent order that Dr. McGovern entered into with the Board on July 2, 2012. Upon the Board's issuance of charges, a physician has the right to an evidentiary hearing before a hearing officer or to settle the charges without an evidentiary hearing by entering into a consent order. *See* HO § 14-405 and HO § 14-401.1.

2

*de bene esse* deposition where defense counsel inquired into the disciplinary charges against Dr. McGovern.[5] She argued in her motion that HO § 14-410 "expressly prohibits

---

A consent order is a "Final Order" of the Board. *See* COMAR 10.32.02.02(B)(16). As Dr. McGovern's consent order notes, when a physician enters into a consent order with the Board, the physician waives his or her "right to appeal any adverse ruling of the Board" which a physician is generally entitled to after an evidentiary hearing. Pursuant to HO § 14-411.1, "[a] description of any disciplinary action taken by the Board or a disciplinary panel against a licensee within the most recent 10-year period that includes a copy of the public order" will be disclosed on the licensee's public individual profile maintained by the Board. Hence, any consent order is posted on a physician's public profile for 10 years.

[5] During Dr. McGovern's *de bene esse* deposition, defense counsel asked, "what's the current status of your medical license in Maryland?" Dr. McGovern responded, "I have no restrictions on my license." The following line of questioning followed:

> [Defense Counsel]: Well, aren't you currently on probation?
>
> [Plaintiff's Counsel]: Objection. And I'll object to any line of questioning that have (sic) to do with any type of probation or investigations.
>
> [Defense Counsel]: Okay. I understand. But doctor, aren't you currently on probation?
>
> [Dr. McGovern]: On the advice of my attorney I'm not allowed to answer that question.
>
> ***
>
> [Defense Counsel]: Well, you're on probation in Maryland for the next two years, right?
>
> [Dr. McGovern]: Again, on the advice of my attorney I'm not allowed to answer that question.
>
> [Defense Counsel]: Doctor, isn't it true that you were also fined ten thousand dollars by the Maryland Board of Physicians for failure to meet the standard of care?
>
> [Plaintiff's Counsel]: I'm going to object to that question as not being relevant and also it being known that those questions are not permissible in this – type of setting and nothing to do with the case.
>
> [Defense Counsel]: I understand you have a continuing objection. But Doctor, isn't it true that you were also fined ten thousand dollars by the Maryland Board of Physicians for failure to meet [the] standard of care?

3

the introduction of such evidence in any collateral proceeding such as an appeal from a

workers' compensation commission claim.'"[6]

---

> [Dr. McGovern]: On the advice of my attorney I'm not allowed to answer that question.
>
> [Defense Counsel]: Okay. Could I have this marked, please?
>
> (McGovern Exhibit 1 [the consent order] was marked for purposes of identification.)
>
> [Defense Counsel]: Doctor, I'm handing you what has been marked for identification purposes as Defense 1. Do you recognize that?
>
> [Dr. McGovern]: On the advice of my attorney I'm not allowed to answer that question.
>
> [Defense Counsel]: I understand that your attorney doesn't want you to answer any substantive questions regarding the status of your license or your probation, but could you just identify what this document is.
>
> [Plaintiff's Counsel]: I'm going to object to your request for him to identify what the object is . . . . because it's not relevant to the case at hand and will not be submittable (sic) in any way and will be a motion subject (sic) in limine.
>
> [Defense Counsel]: I understand. But we could allow the judge to make that ruling.
>
> [Plaintiffs's Counsel]: I'm going to object to any questions regarding this consent order, any further questions regarding it.
>
> [Defense Counsel]: Understood. Doctor, do you know what this document is?
>
> [Dr. McGovern]: On the advice of my attorney I'm not allowed to answer questions.

In response to defense counsel's continued questioning regarding the consent order and the consent order's substantive contents, Dr. McGovern continued to respond that he was not allowed to answer the question on the advice of his attorney.

[6] HO § 14-410 provides in pertinent part:

On December 11, 2014, a jury trial was held in the Circuit Court for Baltimore City to answer the question of whether Smith's knee replacement surgery was causally related to the accidental injury she suffered on September 7, 2012. Prior to jury selection, the trial judge heard the parties' arguments regarding Smith's "Motion *In Limine* to Exclude Certain Testimony from Kevin McGovern, M.D." Smith argued that the admission of the consent order would violate HO § 14-410(a). The trial judge disagreed and stated, "I do agree with [d]efense counsel that the stating (sic) of the consent order in effect is a stipulation of the parties that it's okay to be used."[7] She explained, "it's an exception to the medical review committee privilege[8] as we're referring to it."

Once the trial judge determined that the consent order was admissible, she provided Smith with an opportunity to argue whether the admission of the consent order was "more substantially prejudicial than probative of the issue of whether Dr. McGovern is telling us

---

(a) Except by the express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies, in a civil or criminal action:
(1) The proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible in evidence; and
(2) Any order passed by the Board or disciplinary panel is not admissible in evidence.

[7] Smith's brief explains that the trial court concluded that Dr. McGovern signing the consent order was an "express stipulation and consent" to the consent order being used in a civil or criminal proceeding. HO § 14-410(a).

[8] It appears that the trial judge was referring to the privilege applicable to the Board's "proceedings, records, or files" and "[a]ny order passed by the Board" under HO § 14-410(a) rather than the medical review committee privilege that arises under HO § 1-401(d).

facts that are relevant to Ms. Smith's case."[9]  Smith noted that even though Dr. McGovern

was on probation pursuant to the consent order, his license to practice medicine was still

in good standing and that Dr. McGovern was still qualified to treat patients and offer expert

testimony.  Smith then argued that questioning on the disciplinary action would confuse

and mislead the jury about the merits of the case, which involved the narrow issue of

whether Smith's workplace injury caused her need for knee replacement surgery.

Therefore, Smith contended that the probative value of the consent order and disciplinary

action was substantially outweighed by their prejudicial effect.

> The trial judge ruled that
>
> [i]t appears to this [c]ourt that the probative value of going into the disciplinary action against Dr. McGovern is outweighed by the prejudicial effect of the possible confusion of the jury.  However, there's no question in my mind that the question about the status of his license, that should be asked.
>
> Now, how far that question is allowed to go will depend on the answers Dr. McGovern gives.  If I understand from the written submissions, Dr. McGovern's license is authorized only in the case that he obey the terms of the consent order.

Thus, the trial judge granted, in part, Smith's "Motion *In Limine* to Exclude Certain

Testimony from Kevin McGovern, M.D." and excluded the portions of Dr. McGovern's

*de bene esse* deposition that referenced the disciplinary charges against him.  She, however,

allowed "the Defense to introduce the consent order showing that there are restrictions on

[Dr. McGovern's] license."  In response, Smith asked that the admission of the consent

---

[9] Md. Rule 5-403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

6

order "be limited to the conclusions of law and the order that sets forth the conditions in [Dr. McGovern's] probation" rather than the whole consent order which details the facts of each disciplinary charge against Dr. McGovern. The trial judge agreed with Smith and limited the submission of the consent order to the last six pages, excluding the first seventeen pages of the order. The last six pages of the consent order begin with the Board's "Conclusions of Law," which state:

> Based on the foregoing Findings of Fact, the Board concludes as a matter of law that [Dr. McGovern's] actions and inactions, as set forth above, constitute a failure to meet the appropriate standards for the delivery of quality medical care, in violation of H.O. § 14-404(a)(22); and a failure to keep adequate medical records, in violation of H.O. § 14-404(a)(40). The charges under H.O. § 14-404(a)(23), of willfully submitting false statements to collect fees for which services are not provided, and H.O. § 14-404(a)(19), of grossly overutilizing health care services, are dismissed.

These pages of the consent order also set forth the conditions of Dr. McGovern's two year probation[10] and disclosed that the consent order "is considered a PUBLIC DOCUMENT[.]" The page that contains Dr. McGovern's signature is entitled, "CONSENT" and states:

> I, Kevin McGovern, M.D., acknowledge that I am represented by counsel and have consulted with counsel before entering into this Consent Order. By this Consent and for the purpose of resolving the issues raised by the Board,

---

[10] During his period of probation, Dr. McGovern was required to: (1) "pay a civil fine of $10,000[;]" (2) complete a "Board approved one-on-one tutorial in medical ethics[;]" (3) complete a "3,000-word paper regarding the therapeutic use of sciatic nerve blocks[;]" (4) complete a "Board-approved course or one-on-one tutorial in medical recordkeeping[;]" (5) complete a "Board-approved billing course[;]" (6) complete a "comprehensive Board-approved course or one-on-one tutorial of significant duration in conservative orthopedic pain management treatment[;]" and (7) meet with a Board-approved mentor at least two times for comprehensive peer reviews upon successful completion of the above-referenced courses.

I agree and accept to be bound by the foregoing Consent Order and its conditions.

I acknowledge the validity of this Consent Order as if entered into after the conclusion of a formal evidentiary hearing in which I would have had the right to counsel, to confront witnesses, to give testimony, to call witnesses on my own behalf, and to all other substantive and procedural protections provided by law. I agree to forego my opportunity to challenge these allegations. I acknowledge the legal authority and jurisdiction of the Board to initiate these proceedings and to issue and enforce this Consent Order. I affirm that I am waiving my right to appeal any adverse ruling of the Board that I might have filed after any such hearing.

I sign this Consent Order after having an opportunity to consult with counsel, voluntarily and without reservation, and I fully understand and comprehend the language, meaning and terms of the Consent Order.

After the court addressed the parties' motions, a jury was selected and trial began. Smith was the first witness to testify. She testified on her own behalf as to the injuries she suffered and the recommendations of her doctors. Next, Smith presented expert witness testimony by playing a redacted version of Dr. McGovern's video deposition for the jury.[11]

Dr. McGovern testified as follows:

[Plaintiff's Counsel]: Now, you said you reviewed Dr. Cohen's notes prior to your examination of Ms. Smith; is that correct?

[Dr. McGovern]: Yes.

[Plaintiff's Counsel]: Did you also look at his impression and his diagnosis of what her injury was?

[Dr. McGovern]: Of course.

[Plaintiff's Counsel]: And what was his diagnosis of her injury?

[Dr. McGovern]: Aggravation of pre-existing medial compartment arthritis of her left knee related to the injury of September 7th, 2012.

---

[11] The video deposition was redacted to reflect the trial court's pre-trial ruling to exclude defense counsel's questioning of Dr. McGovern regarding the disciplinary charges against him.

***

[Plaintiff's Counsel]: And what were the – what was shown by the x-rays?

[Dr. McGovern]: That she had degenerative arthritis, severe in her left knee and moderate in her right knee.

[Plaintiff's Counsel]: And what were the results of the – when you reviewed the MRI, what were the results of Ms. Smith's MRI?

[Dr. McGovern]: Again, it showed degenerative changes and it showed a tear of her medial meniscus in her left knee . . . . The menisci, the medial and lateral meniscus, the medial is on the inner part of the joint, the lateral is on the outer part of the joint. The medial part is the part of your knee that would touch your other knee if you put your knees together . . . . In this case[,] there's a tear in the back portion of the meniscus, the posterior horn of the meniscus, which is the most common place for menisci to tear when they tear. The medial is the most common place for it to tear. The lateral meniscus on the outside of the knee doesn't tear nearly as frequently as does the one on the inner aspect of the knee. And most meniscal tears are caused by some sort of twisting injury to the knee.

[Plaintiff's Counsel]: And Ms. Brenda Smith, she would – had both of those positive showings on the MRI as far as her left knee is concerned?

[Dr. McGovern]: It showed that she had a tear of the posterior horn of her medial meniscus as well as arthritis in her knee.

[Plaintiff's Counsel]: And as far as the arthritis is concerned, the MRI classified that as – how did the MRI classify that arthritis in the findings? Would it be correct to say that they said mild degenerative arthritic changes?

[Dr. McGovern]: Well, it says in the lateral meniscus – meniscus it shows mild degenerative change without definite tear. And then in the medial meniscus it shows mild degeneration of the meniscus. That is a little bit different than the arthritis itself. Again that's what they're talking about in the menisci being mildly degenerated. We know from the x-ray that she has fairly significant arthritis in her knee.

***

[Plaintiff's Counsel]: Can someone have arthritis and not need a knee replacement?

[Dr. McGovern]: Oh absolutely. You're looking at one right now, I have arthritis in one of my knees and I don't need a knee replacement.

9

[Plaintiff's Counsel]: And can arthritis in someone's knee, can that be aggravated by a trauma?

[Dr. McGovern]: Absolutely.

[Plaintiff's Counsel]: And can you just explain to the ladies and gentlemen of the jury how a trauma could aggravate pre-existing arthritis?

[Dr. McGovern]: Well, in a simplistic way, it's possible that that could just be the straw that breaks the camel's back. At some point something happens that makes a joint become painful and symptomatic. In this particular case the mostly (sic) likely scenario is that she had arthritis in her knee. She had mild degeneration of her menisci, but when she had the fall she ended up tearing her medial meniscus [as] the result of the fall. That tear then aggravates and inflames the joint and causes the knee to become symptomatic, the arthritis to become symptomatic. In a young healthy person with no arthritis you could go in there with the arthroscope and repair or remove the damaged meniscus, and the symptoms would go away. But unfortunately once the knee is arthritic, such as this one, then taking care of the meniscus, fixing it or removing it doesn't solve the problem. Because the arthritis, once it becomes inflamed and symptomatic, stays symptomatic. So she would need something more significant than an arthroscopy for a torn meniscus, she would need a knee replacement to make her symptoms go away.

***

[Plaintiff's Counsel]: And what is your diagnosis as to after, you know, reviewing the history, reviewing the MRIs, looking at your notes, Dr. Cohen's notes, the x-rays, what is your diagnosis of what the cause of her current condition is and what's the cause of the need for the left knee replacement?

[Dr. McGovern]: Well, it's my belief that she had arthritis in her knee that wasn't symptomatic before this injury. That this injury caused her to tear her medial meniscus which caused an aggravation of her arthritis and has caused her to remain symptomatic as a result of that. The only solution for her problem as a result of this injury of September 7th, 2012 now is to have the knee replacement. Nothing less than that will work. She's already had conservative treatment. She's had Cortisone shots and gel injections into her knee of lubricants, called viscosupplementation, none of which have solved her problem and none of which probably would. And at this point a knee replacement is the only thing that would resolve her symptoms she now has as a result of her injury of September 2012.

10

[Plaintiff's Counsel]: And that opinion is – diagnosis is based within a reasonable degree of medical probability?

[Dr. McGovern]: Yes or I would haven't (sic) said it.

[Plaintiff's Counsel]: Did you have the opportunity to review a letter from Dr. Cohen dated January 21st, 2014?

[Dr. McGovern]: Yes.

[Plaintiff's Counsel]: In that letter did Dr. Cohen detail his opinion of Ms. Smith's left knee condition in that letter?

[Dr. McGovern]: It did.

[Plaintiff's Counsel]: And what was his opinion?

[Dr. McGovern]: The same as mine.

***

[Plaintiff's Counsel]: Now, Ms. Smith was also diagnosed or I should say seen by a Dr. Becker; are you familiar with Dr. Becker?[12]

[Dr. McGovern]: I know who Dr. Becker is, yes.

[Plaintiff's Counsel]: And have you had a chance to look at his report and his addendum to his report?

[Dr. McGovern]: I have.

[Plaintiff's Counsel]: And what is your understanding of Dr. Becker's role in this case?

[Dr. McGovern]: He performed an independent medical evaluation for the defense.

[Plaintiff's Counsel]: And in reviewing his report is there anything significant that you disagree with?

[Plaintiff's Counsel]: I think we disagree on the fact that she needs a knee replacement as a result of her injury. We agree that she has arthritis that was aggravated by the accident.

---

[12] Dr. Larry Becker was defense counsel's expert witness.

On cross-examination, defense counsel asked, "can you state to a reasonable degree of professional certainty whether or not Ms. Smith would have needed a knee replacement even if she hadn't slipped at work?" Dr. McGovern responded:

> No, I can't say a hundred percent whether she would or wouldn't have. Again, she wasn't symptomatic before this injury. There's no way of knowing at what point she would or wouldn't become symptomatic in the future. There's a possibility she would have needed a knee replacement in the future with or without this injury, but I can't say when it would be or for sure it would be.

After Dr. McGovern's deposition was played, the trial judge admitted into evidence Dr. McGovern's curriculum vitae. The defense presented the testimony of its expert witness, Dr. Larry Becker, via video deposition. Next, the court admitted into evidence Dr. Becker's curriculum vitae and the Workers' Compensation Commission's Order resulting from the administrative proceeding. The trial judge also granted, over Smith's objection, defense counsel's request to move into evidence the last six pages of the Board's consent order against Dr. McGovern.

The parties rested and the trial judge gave the jury a series of instructions on the law. After the jury instructions were given, the parties gave closing arguments. Defense counsel repeatedly mentioned the consent order in his closing argument:

> Bringing up this whole aggravation argument is what's meant to confuse you, because they have to come up with something different than their expert .... [Smith's Counsel] would indicate that there's a piece of evidence [the consent order] that you'll review in conjunction with their expert from Dr. McGovern. Please read that document and decide whether you believe anything that individual told you today, because when he was asked about his medical license, he said everything was just fine. He wasn't truthful. He's on probation currently for ethical problems involved in workers' compensation claims and he's who they hired . . . . Dr. McGovern's disciplinary action, being on probation, I mean, look at the fine that was

12

levied against him for unethical practices in workers' compensation claims, but yet you should believe him? His entire testimony should be disregarded . . . . Was Dr. McGovern's testimony consistent? Nope. The consent order shows the inconsistencies in his testimony about the status of his medical license. Whether the witness' testimony was contradicted by evidence. Once again, the order that you're going to read from the Maryland Board of Physicians completely contradicts and puts into question his truthfulness, his honesty, his integrity, his ethics. And they want you to believe this gentleman . . . . But just think in your own mind, would you or would you (sic) have a loved one go to a doctor for treatment that's been disciplined by the Maryland Board of Physicians, that's on probation for ethical problems, would you ever in your wildest dreams send your loved one to that provider? But yet they want you to rely upon him in this claim. It's insulting to this entire system.

And for that reason I would ask on behalf of my client that you affirm the decision of the Commission, [and] check the box "No."

During rebuttal, Smith's counsel attempted to respond to the statements made by defense counsel during his closing argument:

Now, I realize that defense counsel has submitted into evidence a disciplinary action against Dr. McGovern and it's - - he is on probation . . . . So you think to yourself, you say, all right, Dr. McGovern got disciplined, he must have done something wrong, he is on probation. Well, when people are on probation, when they are being disciplined . . . . You make sure you tow the line, you make sure you don't get in trouble, because if you do, you're going to have to - - have the consequences, and Dr. McGovern is in that exact situation right now. So he's not making any mistakes. He's following the book, he's following the rules, because he is on probation and that's something to take into consideration when you weigh his credibility.

After jury deliberations, the jury returned and responded "no" to the question: "'Is Brenda Smith's knee replacement surgery causally related to the accidental injury suffered on September 7, 2012,' yes or no?" Based on this jury verdict, the trial judge affirmed the decision of the Workers' Compensation Commission.

13

On December 23, 2014, Smith filed a "Motion for a New Trial." Initially, on April 1, 2015, another trial judge granted Smith's "Motion for a New Trial" but subsequently denied Smith's motion in an "Order Correcting and Replacing the Court's Prior Order" on June 24, 2015. The court explained that HO § 14-410(a) "only applies to civil trials involving tort actions for medical malpractice and thus is inapplicable to this case."

Smith noted an appeal to the Court of Special Appeals on July 9, 2015. Pending the appeal and prior to any proceedings in that court, we granted *certiorari*, *Smith v. Delaware North Companies*, 446 Md. 290, 132 A.3d 193 (2016), to answer the following questions:

> 1. Does the privilege set forth under § 14-410 of the Health Occupations Article ("H.O.") bar the admission of evidence of a Board of Physicians [c]onsent [o]rder to impeach a physician who is offering testimony as an expert witness?
>
> 2. Was the privilege set forth under § 14-410 intended to be strictly limited to medical malpractice actions?

For the reasons stated below, we shall answer the first question in the affirmative and the second question in the negative.

## STANDARD OF REVIEW

The issues before this Court arise out of the trial court's admission as evidence at trial of the consent order and its subsequent denial of Smith's motion for new trial. The trial court based both of these rulings on its interpretation of HO § 14-410. Questions of statutory interpretation are purely legal inquires, which we review *de novo*. *Reier v. State Dep't of Assessments & Taxation*, 397 Md. 2, 26, 915 A.2d 970, 984 (2007).

"The cardinal rule of statutory interpretation is to give effect to the legislative purpose or policy." *State Dep't of Assessments & Taxation v. Md.-Nat'l Capital Park &*

14

*Planning Comm'n*, 348 Md. 2, 13, 702 A.2d 690, 696 (1997).  In ascertaining legislative intent, "we look first to the language of the statute, giving it its natural and ordinary meaning."  *Scriber v. State*, 437 Md. 399, 410, 86 A.3d 1260, 1266 (2014).  Where the plain language of the statute is unambiguous, we end our inquiry as to legislative intent and "apply the statute as written, without resort to other rules of construction."  *Griffin v. Lindsey*, 444 Md. 278, 287, 119 A.3d 753, 758 (2015).  We have also stated that:

> We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application.
>
> We [] do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone.  Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.  We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

*Merchant v. State*, 448 Md. 75, 94–95, 136 A.3d 843, 855 (2016).  Additionally, we presume that "'the Legislature intends its enactments to operate . . . such that no part of the statute is rendered meaningless or nugatory.'"  *Fisher v. Eastern Corr. Inst.*, 425 Md. 699, 707, 43 A.3d 338, 343 (2012) (quoting *Smack v. Dep't of Health and Mental Hygiene*, 378 Md. 298, 306, 835 A.2d 1175, 1179 (2003)).

## DISCUSSION

HO § 14-410 governs the issue of whether the Board of Physician's consent order entered into by Dr. McGovern was admissible as evidence in the instant case.  The parties,

however, offer competing interpretations of this statute.  HO § 14-410 provides in pertinent part:

> (a) Except by the express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies, in a civil or criminal action:
> (1) The proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible in evidence; and
> (2) Any order passed by the Board or disciplinary panel is not admissible in evidence.
> (b) This section does not apply to a civil action brought by a party to a proceeding before the Board or a disciplinary panel who claims to be aggrieved by the decision of the Board or the disciplinary panel.

### The Statutory Privilege Pursuant to HO § 14-410

Smith argues that HO § 14-410(a) creates what she calls "the board proceedings privilege."  The language of HO § 14-410 is clear and unambiguous.  As Smith argues, the plain language of HO § 14-410(a) prevents the admission or discovery of, "in a civil or criminal action[,] . . . [t]he proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies" and the discovery of "[a]ny order passed by the Board or disciplinary panel."  Smith is also correct in her assertion that HO § 14-410 provides only two exceptions to this privilege.  Pursuant to HO § 14-410(a): "The proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies" and the discovery of "[a]ny order passed by the Board or disciplinary panel" may be used "in a civil or criminal action" if all parties to the Board proceeding or disciplinary panel *expressly stipulate and consent to its use*.  HO § 14-410(b) provides a second exception: these privileged materials may also be used in "a civil action brought by a party to a proceeding before the Board or a disciplinary panel who claims to be aggrieved

16

by the decision of the Board or the disciplinary panel." The trial court's determination that "the [signing] of the consent order in effect is a stipulation of the parties that it's okay to be used" does not fall under either statutory exception.

Both Dr. McGovern and the Board signed the consent order and these signatures indicate the parties' agreement to the terms of the order. As the consent order notes, by agreeing to the terms of the order, a physician acknowledges that he freely agrees to be bound by the terms of the consent order and is aware that he waives certain rights by settling the charges against him without an evidentiary hearing. Nowhere on the page entitled "CONSENT" or anywhere else in the consent order does it state that agreeing to the terms of the consent order also indicates consent to its admissibility or discoverability "in a civil or criminal action." HO § 14-410. The plain language of HO § 14-410 requires "the express stipulation and consent of all parties to a proceeding" before any "proceedings, records or files of the Board" or "[a]ny order passed by the Board or disciplinary panel" can be admitted "in a civil or criminal action." It is clear that Dr. McGovern's signature on the "CONSENT" page does not rise to the level of an "express stipulation and consent" to anything other than agreement to be bound by the terms of the consent order. Thus, we conclude that the trial judge erred in ruling that the signing of the consent order constituted an exception to the privilege provided under HO § 14-410.

As noted above, there are only two exceptions to the privilege set forth under HO § 14-410. Contrary to Delaware North's characterization of the consent order as permissible impeachment evidence, HO § 14-410 does not contain an exception for the use of "proceedings, records or files of the Board" or "[a]ny order passed by the Board or

17

disciplinary panel" to be used to impeach the credibility of a witness. To read in an impeachment exception would impermissibly "reflect an intent not evidenced in the plain and unambiguous language of the statute" and "construe the statute with forced or subtle interpretations that . . . extend its application." *Kushell v. Dep't of Nat. Res.*, 385 Md. 563, 576–77, 870 A.2d 186, 193 (2005) (quoting *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003)). Therefore, we hold that the plain language of HO § 14-410 bars the admission of the consent order to impeach the credibility of a physician who is offering testimony as an expert witness. [13]

## The Public Nature of the Consent Order

Delaware North's contention that the consent order's classification as a public document removes it from the ambit of HO § 14-410 is also without merit. As previously discussed, HO § 14-410 provides two statutory exceptions. Neither of these exceptions allows parties to a disciplinary proceeding of the Board to waive the protections provided under HO § 14-410 by signing a document containing a public document disclosure. Although HO § 14-410(a) allows privileged materials to be used if all parties to the Board proceeding or disciplinary panel expressly stipulate and consent to *its use*, contrary to

---

[13] Even where the plain meaning of the statute is clear, "the resort to legislative history is a confirmatory process." *Smith v. State*, 399 Md. 565, 578, 924 A.2d 1175, 1182 (2007). Our interpretation of HO § 14-410 is consistent with the statute's legislative purpose. *See Certain Underwriters at Lloyd's, London v. Cohen*, 785 F.3d 886, 894 (4th Cir. 2015) ("Barring the admission of Board disciplinary orders in later civil and criminal actions encourages physicians to cooperate during Board proceedings. Such cooperation strengthens the Board's ability to conduct proceedings that are thorough and fair, and thereby advances the Board's efforts to protect the health and safety of the public.").

Delaware North's belief, agreeing that a consent order is a public document does not amount to an express stipulation and consent as to the order's *use* at trial. To adopt Delaware North's view would invite a "forced or subtle interpretation" of the exception provided in HO § 14-410(a). *Fangman v. Genuine Title, LLC*, 447 Md. 681, 691, 136 A.3d 772, 778 (2016).

In *Certain Underwriters at Lloyd's, London v. Cohen*, the Fourth Circuit addressed the same argument that Delaware North puts forth: agreeing to enter into a consent order which is a public document[14] renders the order and the underlying circumstances of the

---

[14] HO § 14-411.1 provides:
> (a) In this section, "health maintenance organization" has the meaning stated in § 19-701 of the Health-General Article.
>
> (b) The Board shall create and maintain a public individual profile on each licensee that includes the following information:
> (1) A summary of charges filed against the licensee, including a copy of the charging document, until a disciplinary panel has taken action under § 14-404 of this subtitle based on the charges or has rescinded the charges.
> (2) A description of any disciplinary action taken by the Board or a disciplinary panel against the licensee within the most recent 10-year period that includes a copy of the public order;
> (3) A description in summary form of any final disciplinary action taken by a licensing board in any other state or jurisdiction against the licensee within the most recent 10-year period;
> (4) The number of medical malpractice final court judgments and arbitration awards against the licensee within the most recent 10-year period for which all appeals have been exhausted as reported to the Board;
> (5) A description of a conviction or entry of a plea of guilty or nolo contendere by the licensee for a crime involving moral turpitude reported to the Board under § 14-416 of this subtitle; and
> (6) Medical education and practice information about the licensee including:
>> (i) The name of any medical school that the licensee attended and the date on which the licensee graduated from the school;
>> (ii) A description of any internship and residency training;

(iii) A description of any specialty board certification by a recognized board of the American Board of Medical Specialties or the American Osteopathic Association;

(iv) The name of any hospital where the licensee has medical privileges as reported to the Board under § 14-413 of this subtitle;

(v) The location of the licensee's primary practice setting; and

(vi) Whether the licensee participates in the Maryland Medical Assistance Program.

(c) In addition to the requirements of subsection (b) of this section, the Board shall:

(1) Provide appropriate and accessible Internet links from the Board's Internet site:

(i) To the extent available, to the appropriate portion of the Internet site of each health maintenance organization licensed in this State which will allow the public to ascertain the names of the physicians affiliated with the health maintenance organization; and

(ii) To the appropriate portion of the Internet site of the American Medical Association;

(2) Include a statement on each licensee's profile of information to be taken into consideration by a consumer when viewing a licensee's profile, including factors to consider when evaluating a licensee's malpractice data, and a disclaimer stating that a charging document does not indicate a final finding of guilt by a disciplinary panel; and

(3) Provide on the Board's Internet site:

(i) Notification that a person may contact the Board by telephone, electronic mail, or written request to find out whether the number of medical malpractice settlements involving a particular licensee totals three or more with a settlement amount of $150,000 or greater within the most recent 5-year period as reported to the Board; and

(ii) A telephone number, electronic mail address, and physical address through which a person may contact the Board to request the information required to be provided under item (i) of this item.

(d) The Board:

(1) On receipt of a written request for a licensee's profile from any person, shall forward a written copy of the profile to the person;

(2) Shall maintain a Web site that serves as a single point of entry where all physician profile information is available to the public on the Internet; and

(3) On receipt of a verbal, electronic, or written request in accordance with subsection (c)(3) of this section, shall provide the information within 2 business days of the request.

20

order admissible in a court proceeding.[15]  785 F.3d at 893−94.  *Certain Underwriters at Lloyd's, London* involved a physician who had entered into a consent order with the Board.  285 F.3d at 888–89.  In the consent order, the physician agreed to a three-month suspension followed by a five-year period of probation.  *Id.*  The consent order also contained a provision providing that the consent order "shall be a public document."  *Certain Underwriters at Lloyd's*, London, 785 F.3d at 893.  The physician's disability insurer then brought suit against the physician for misrepresentations he made on his insurance application regarding the disciplinary actions he faced.  The Fourth Circuit reversed the magistrate judge's decision to admit the physician's consent order at trial.  It explained that based on the plain language of HO § 14-410, "solely by the 'express stipulation and consent of all parties to a proceeding before the Board' can a Board order be admitted into evidence in a civil proceeding like this one."  *Id.*

 (e) The Board shall provide a mechanism for the notification and prompt correction of any factual inaccuracies in a licensee's profile.

 (f) The Board shall include information relating to charges filed against a licensee by a disciplinary panel and any final disciplinary action taken by a disciplinary panel against a licensee in the licensee's profile within 10 days after the charges are filed or the action becomes final.

 (g) This section does not limit the Board's authority to disclose information as required under § 14-411 of this subtitle.

[15] The Fourth Circuit had diversity jurisdiction over the case in *Certain Underwriters at Lloyd's, London*.  In diversity cases, the Fourth Circuit considers the questions before it "as the state court would do if confronted with the same fact pattern."  *Certain Underwriters at Lloyd's, London*, 785 F.3d at 892 (citing *Roe v. Doe,* 28 F.3d 404, 407 (4th Cir. 1994)).

21

It further concluded that the fact "[t]he Consent Order states on its face that it 'shall be a public document' under the Maryland Public Information Act" does not "somehow render it admissible in a judicial proceeding." *Id.* The Fourth Circuit elaborated:

> [The Maryland Public Information Act] "allows generally for the inspection and receipt of copies of public records." *Waterkeeper Alliance, Inc. v. Md. Dep't of Agric.*, 439 Md. 262, [268,] 96 A.3d 105, 108 (2014). Each disciplinary order is also publicly available on the Internet. *See* Md. Code Ann., Health Occ. §§ 14–411.1(b)–(d)(2) (requiring the Board to "create and maintain a public individual profile" on each licensed physician, available to the public on the Internet, which includes "[a] description of any disciplinary action taken by the Board . . . within the most recent 10–year period" and "includes a copy of the public order"). But nothing in either the Public Information Act or Title 14 of the Health Occupations Article requires that public documents be admissible in judicial proceedings.

*Certain Underwriters at Lloyd's, London*, 785 F.3d at 893−94 (footnote omitted). This logic is similarly applicable to the case *sub judice*. "That a document is public does not remove it from the purview of the rules of evidence, or a statute explicitly governing its admissibility." *Certain Underwriters at Lloyd's, London*, 785 F.3d at 894. Although Delaware North does not contend that the public nature of a document removes it "from the purview of the rules of evidence," its argument ignores the fact that HO § 14-410 explicitly governs the admissibility of Dr. McGovern's consent order. *Id.*

Delaware North also argues that HO § 14-410 does not bar the admission of the consent order into evidence because HO § 14-411 permits the disclosure of a physician's general licensure information. It refers specifically to HO § 14-411(c), which states in pertinent part:

> Nothing in this section shall be construed to prevent or limit the disclosure of: (1) General licensure, certification, or registration information maintained

22

by the Board, if the request for release complies with the criteria of § 4-333 of the General Provisions Article; . . .

From this, Delaware North reasons that the trial court properly admitted the redacted consent order which it claims only disclosed the general licensure status of Dr. McGovern's medical license. Smith counters that HO § 14-411(c) is irrelevant and that HO § 14-411(c) does not override HO § 14-410. Smith further asserts that Delaware North's interpretation improperly makes the term "disclosure" synonymous with the term "admission." The Board's disclosure of "[g]eneral licensure, certification, or registration information" does not equate to the "admission" of the consent order. We agree with Smith that the issuance of the consent order itself does not constitute "[g]eneral licensure, certification, or registration information" but rather, "it is evidence of discipline." Delaware North's interpretation renders HO § 14-410 nugatory. Under Delaware North's interpretation, consent orders would be admissible into evidence even though HO § 14-410(a)(2) plainly states: "*Any order* passed by the Board or disciplinary panel is not admissible in evidence." (emphasis added).

HO § 14-411(c)(1) provides: "Nothing in this section shall be construed to prevent or limit the disclosure of . . . [g]eneral licensure, certification, or registration information maintained by the Board." The request for the release of the "[g]eneral licensure, certification, or registration information maintained by the Board" must also "compl[y] with the criteria of § 4-333 of the General Provisions Article [("GP").]" GP § 4-333 is a provision within the Maryland Public Information Act ("the MPIA"). It sets forth the

information a custodian of a public record may or may not disclose with regard to "the licensing of an individual in an occupation or a profession."  GP § 4-333.

The ambiguity in the otherwise plain language of HO § 14-411(c) arises in the following language because it is unclear whether it governs only disclosure of records by the Board or disclosure of records by anyone who makes a proper request under the MPIA, including parties to a civil or criminal action: "[n]othing in this section shall be construed to prevent or limit the disclosure of . . . [g]eneral licensure, certification, or registration information maintained by the Board."  When language is ambiguous "we must look to other indicia to ascertain the intent of the General Assembly, including the relevant statute's legislative history, the context of the statute within the broader legislative scheme, and the relative rationality of competing constructions."  *Twigg v. State*, 447 Md. 1, 24, 133 A.3d 1125, 1139 (2016) (internal quotations omitted).

The legislative history of HO § 14-411 provides valuable insight into the legislative intent of HO § 14-411(c).  The predecessor statute to HO § 14-411(c)(1) was HO § 14-510.1(c).  *See* 1991 Md. Laws, Chap. 55.  HO § 14-510.1(c) was enacted by Chapter 237 of the Acts of 1990 via Senate Bill 138.  The Senate Economic and Environmental Affairs Committee Bill Analysis on Senate Bill 138 (1990) ("Bill Analysis"), indicates that the bill:

> Authorizes *the Board* to disclose certain licensing information as provided in the State Government Article, including the name, address, business telephone number, educational and occupational background, and professional qualifications of a licensee, any orders and findings resulting from formal disciplinary actions against a licensee, and any evidence of financial responsibility of a licensee.

24

(emphasis added).  The Bill Analysis further explains that "[d]uring the 1989 revision of the Board's statute, a provision to permit the Board to release information in accordance with the State Government Article was inadvertently omitted."  This reveals that the Legislature intended HO § 14-411(c) to apply to *the Board's* disclosure of "[g]eneral licensure, certification, or registration information maintained by the board" when the Board receives a request pursuant to the MPIA.  HO § 14-411(c) does not, as Delaware North contends, apply to the disclosure of the items set forth in HO § 14-411(c) by parties in a civil or criminal action.

That HO § 14-411(c) applies only to *the Board's* disclosure of general licensure information comports with the principles of statutory construction because it allows HO § 14-411(c) and HO § 14-410 to be "construed together and harmonized." *State v. Roshchin*, 446 Md. 128, 141, 130 A.3d 453, 461 (2016).  HO § 14-411(c) allows *the Board* to disclose general licensure information in the interest of public policy.  *See Fioretti v. Maryland State Bd. of Dental Examiners*, 351 Md. 66, 76, 716 A.2d 258, 263 (1998) (explaining that the purpose of the MPIA is "to provide the public the right to inspect the records of the State government or of a political subdivision").  Disclosure by the Board pursuant to HO § 14-411 does not interfere or prevent compliance with HO § 14-410 which prohibits, with limited exceptions, the admission in any civil or criminal action, "[t]he proceedings, records, or files of the Board, [or] a disciplinary panel" and "[a]ny order passed by the Board or disciplinary panel" in the interest of "encourag[ing] physicians to cooperate during Board proceedings."  HO § 14-410(a); *Certain Underwriters at Lloyd's, London*, 785 F.3d at 894.

25

**The Applicability of HO § 14-410 to All Civil and Criminal Actions**

In the Circuit Court's order denying Smith's motion for a new trial, it concluded that HO § 14-410(a) "only applies to civil trials involving tort actions for medical malpractice and thus is inapplicable to this case." Similarly, Delaware North argues that the trial court properly admitted the consent order because HO § 14-410 is applicable only where the civil action arises out of matters addressed by the Board. Delaware North cites *Unnamed Physician v. Comm'n on Med. Discipline,* 285 Md. 1, 400 A.2d 396 (1979), where this Court analyzed the predecessor statute to HO § 1-401, Art. 43, § 134A. Delaware North claims that this Court's conclusion regarding the legislative intent of HO § 1-401 in *Unnamed Physician* offers insight into the legislative intent of HO § 14-410. In *Unnamed Physician*, the Commission on Medical Discipline[16] issued *subpoenas duces tecum* to members of a hospital review committee in the course of its investigation into the medical practices of a physician. In the context of HO § 1-401, this Court concluded that "it appears probable that the words 'civil action' were intended to mean a tort action for medical malpractice." *Unnamed Physician*, 285 Md. at 12, 400 A.2d at 402.

Delaware North also cites *St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Assocs., P.A.*, 392 Md. 75, 896 A.2d 304 (2006) to support its interpretation that HO § 14-410 only applies to certain types of civil actions. It explains that *St. Joseph Med. Ctr., Inc.*, which involved a dispute between physicians over the discovery of documents covered by the medical review committee privilege of HO § 1-401(d), stands for the proposition that the

---

[16] The Commission on Medical Discipline was the predecessor agency to the Board of Physicians.

privilege of HO § 14-410 covers only "a civil action *against the physician.*" (emphasis in brief).

Delaware North's reliance on these cases is misplaced. Rather, both *Unnamed Physician* and *St. Joseph Med. Ctr., Inc.* support Smith's assertion that the privilege of HO § 14-410 applies to her appeal of a Workers' Compensation Commission decision. In fact, this Court explicitly stated in *Unnamed Physician* that "judicial review of the decision of an administrative agency is a civil action." 285 Md. at 9−10, 400 A.2d at 401. The Workers' Compensation Commission "is an adjudicatory administrative agency." *W.R. Grace & Co. v. Swedo*, 439 Md. 441, 452, 96 A.3d 210, 217 (2014). Therefore, Smith's case falls squarely within the plain meaning of "a civil action." *Unnamed Physician*, 285 Md. at 9−10, 400 A.2d at 401.

The Court of Special Appeals recently addressed the argument that HO § 14-410 "does not apply to civil actions in which a physician is testifying as an expert" in *Pepsi Bottling Grp. v. Plummer*, 226 Md. App. 460, 469, 130 A.3d 1047, 1053 (2016). In *Plummer*, Derek Plummer designated Dr. Franchetti, his physician, as an expert witness in the jury trial of his workers' compensation claim. 226 Md. App. at 465, 130 A.3d at 1050. Dr. Franchetti was charged with violating HO §§ 14-404(a)(19), 14-404(a)(22), and 14-404(a)(40). *Id.* To resolve these charges, he entered into a consent order with the Board. *Id.* In Dr. Franchetti's *de bene esse* testimony, he asserted a claim of privilege pursuant to HO § 14-410 and refused to answer any questions regarding the disciplinary proceedings against him or the consent order he entered into. *Plummer*, 226 Md. App. at 46, 130 A.3d at 1051.

27

First, the *Plummer* court stated that this Court's statement in *Unnamed Physician* — "it appears probable that the words 'civil action' were intended to mean a tort action for medical malpractice" — does not limit the privilege of HO § 14-410 to malpractice actions. 285 Md. at 12, 400 A.2d at 402; s*ee Plummer*, 226 Md. App. at 471, 130 A.3d at 1054. It explained:

> For us to accept appellants' argument, we would have to equate the word "includes" with the word "means." Neither case law nor the general provisions of the Maryland Code support that construction of "includes." In *Tribbitt v. State*, 403 Md. 638, 943 A.2d 1260 (2008), the Court of Appeals . . . held that, "when statutory drafters use the term 'means,' they intend the definition to be exhaustive," but "when drafters use the term 'includes,' it is generally intended to be used as 'illustration and not . . . limitation.'" *Id.* at 647, 943 A.2d 1260 (citing *Hackley v. State,* 389 Md. 387, 393, 885 A.2d 816 (2005)). *Accord* Maryland Code (2014), General Provisions Article, § 1–110, which provides: "'Includes' or 'including' means includes or including by way of illustration and not by way of limitation."

*Plummer*, 226 Md. App. at 471−72, 130 A.3d at 1054.

Moreover, the *Plummer* court observed:

> *Unnamed Physician* was focused upon the interpretation of language contained in Art. 43, § 134A(d), the predecessor to the current HO § 1–401(d), and whether that statute precluded *the Board's right* to discovery of *a hospital's medical review committee's* records and proceedings; the issue on appeal in *Unnamed Physician* was not the discoverability and admissibility of the Board's proceedings, records, and orders.

*Plummer*, 226 Md. App. at 472−73, 130 A.3d at 1055 (emphasis in original). Like *Plummer*, the issue on appeal in the instant case is the "discoverability and admissibility of the Board's proceedings, records, and orders," which was not addressed in *Unnamed Physician*. *Id.*

28

The *Plummer* court also focused on the language of the predecessor to HO § 1-401(d), Art. 43, § 134A(d):

> The proceedings, records, and files of a medical review committee are neither discoverable nor admissible into evidence ***in any civil action arising out of matters which are being reviewed and evaluated by the committee.*** This immunity does not apply to a civil action brought by a party to the proceedings of the review committee and claiming to be aggrieved by the decision of the committee. Also, this immunity does not extend to any records or documents considered by the committee which would otherwise be subject to discovery and introduction into evidence in a civil action.

*Plummer*, 226 Md. App. at 473, 130 A.3d at 1055 (emphasis in original). The *Plummer* court reasoned that because the same "arising out of" language is not present in either HO § 14-410 or its predecessor, Art. 43, § 130, HO § 14-410(a) is not limited to malpractice claims. 226 Md. App. at 474, 130 A.3d at 1055–56.

The *Plummer* court added, "[a]ny doubt in that regard was removed when the Court of Appeals revisited the interpretation of 'civil action' in *St. Joseph Medical Center, Inc. v. Cardiac Surgery Assocs., P.A.*, 392 Md. 75, 896 A.2d 304 (2006)." 226 Md. App. at 474, 130 A.3d at 1056. Like *Unnamed Physician, St. Joseph Medical Center, Inc.* implicated HO § 1-401(d)(1). The *Plummer* court noted "that the privilege relative to medical review committee proceedings . . . had been amended in 1997, and the statute no longer included the words 'arising out of matters that are being reviewed and evaluated[.]'" *Id.* Based on this amendment, the *Plummer* court aptly quoted this Court's conclusion in *St. Joseph Medical Center, Inc.* that "the 1997 change [] extended the privilege to 'any civil action.'" 392 Md. at 98, 896 A.2d at 318; *see Plummer*, 226 Md. App. at 474, 130 A.3d at 1056. Thus, the Circuit Court erred in denying Smith's motion for a new trial

because the privilege set forth under HO § 14-410 was not intended to be strictly limited to medical malpractice actions.

## Prejudicial Effect of Admitting Consent Order

Pursuant to Maryland Rule 5-103(a), "[e]rror may not be predicated upon a ruling that admits . . . evidence unless the party is prejudiced by the ruling." "The focus of our inquiry is on the probability, not the possibility, of prejudice." *Flores v. Bell*, 398 Md. 27, 33, 919 A.2d 716, 720 (2007). Delaware North claims that even if the court erred in admitting the redacted consent order, the admission of the order did not impact the outcome of the trial or prejudice Smith. To support this theory, Delaware North states that "the transcript shows that [the status of Dr. McGovern's medical license] was not even a fact focused on by either counsel for [Delaware North] or counsel for [Smith]." It claims further that there was ample evidence aside from the redacted consent order to support the jury's verdict such as "the testimony of [Smith], the testimony of the physicians, and the evidentiary record." In response, Smith argues that the admission of the redacted consent order "badly impacted the jury's consideration of Dr. McGovern's expert testimony." We agree.

Smith notes as an alternative argument that the entire consent order should have been excluded under Md. Rule 5-403 because its prejudicial value outweighed its probative value. However, once the redacted consent order was admitted into evidence, defense counsel was free to comment on this evidence, and did, in fact, comment on this evidence at great length. As previously discussed, HO § 14-410 serves as a statutory bar to the admission of a consent order into evidence in any civil or criminal action. The trial court's

30

admission of the consent order allowed the jury to consider evidence that the General Assembly explicitly precluded from consideration.

Contrary to Delaware North's contention that the consent order was not "even a fact focused on" at trial, Smith points to the transcript, which reveals at least four instances where defense counsel emphasized the consent order against Dr. McGovern as a reason for disregarding Smith's theory of causation. First, defense counsel tells the jury:

> Please read that document [the consent order] and decide whether you believe anything that individual told you today, because when he was asked about his medical license . . . . He wasn't truthful. He's on probation currently for ethical problems involved in workers' compensation claims and he's who [Smith] hired.

Moments later, defense counsel stated: "Dr. McGovern's disciplinary action, being on probation, I mean, look at the fine that was levied against him for unethical practices in workers' compensation claims, but yet you should believe him? His entire testimony should be disregarded." The disciplinary charges against Dr. McGovern were rehashed when defense counsel told the jury:

> The consent order shows the inconsistencies in his testimony about the status of his medical license. Whether the witness' testimony was contradicted by evidence. Once again, the order that you're going to read from the Maryland Board of Physicians completely contradicts and puts into question his truthfulness, his honesty, his integrity, his ethics.

Defense counsel concluded his closing argument by asking the jury:

> [W]ould you have a loved one go to a doctor for treatment that's been disciplined by the Maryland Board of Physicians, that's on probation for ethical problems, would you ever in your wildest dreams send your loved one to that provider? But yet they want you to rely upon him in this claim. It's insulting to this entire system.

31

And for *that reason* I would ask on behalf of my client that you affirm the decision of the Commission, check the box "No."

(emphasis added).

Defense counsel not only emphasized the consent order and the underlying disciplinary charges Dr. McGovern faced but asked the jury to affirm the decision of the Workers' Compensation Commission for "that reason," *i.e.*, the fact that Dr. McGovern had been disciplined by the Board. It is more than probable that the jury considered this inadmissible evidence as a result of defense counsel's repeated mention of the consent order and urging of the jury to render a verdict based on the disciplinary action. Because there is a high probability that the jury considered legally inadmissible evidence in rendering its verdict, we conclude that the admission of the consent order was prejudicial to Smith.

## CONCLUSION

The plain language of HO § 14-410 generally prohibits the admission of, in any "civil or criminal action," the "proceedings, records or files of the Board, a disciplinary panel, or any of its other investigatory bodies" and "[a]ny order passed by the Board of disciplinary panel." HO § 14-410(a). A physician's agreement to the terms of a consent order and the public nature of a consent order does not constitute "express stipulation and consent" to its use as evidence in a civil or criminal action. *Id.* The trial court erred as a matter of law in admitting a redacted version of the consent order when the order was subject to the statutory bar of HO § 14-410 and did not meet any of the exceptions provided therein. Defense counsel's repeated emphasis of the consent order and the underlying

32

disciplinary action against Dr. McGovern made it more than probable that the jury considered the inadmissible evidence, causing prejudice to Smith's case. As a result, we conclude that a new trial is warranted.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**